UNITED STATES of América, et al.

v.

DARWIN CONSTRUCTION
COMPANY, INC.

Civ. No. Y–86–67.

United States District Court,
D. Maryland.

Feb. 4, 1988.

See also, 680 F.Supp. 739.

Breckinridge L. Willcox, U.S. Atty., for the State of Md., and Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., for petitioners; Frederic Baker, Washington, D.C., of counsel.

Price O. Gielen, Baltimore, Md., Randall J. Turk and R. Stan Mortenson, Washington, D.C., for the respondent and intervenor.

**532**

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

At this fourth hearing regarding Darwin Construction Company's noncompliance with an Internal Revenue Service summons,[1] the Court granted respondent Darwin's motion to vacate the government's writ of execution because the writ was issued before there was a judgment regarding the violation of the Court's final contempt order. The hearing then proceeded on the merits of the government's allegation that Darwin failed to comply with that order for nine days and therefore should be fined $5,000 per day according to its prescription. The Court finds that respondent Darwin was not in substantial compliance with the Court's order for six days and therefore renders a final judgment that Darwin must pay the Court $30,000.00.

## BACKGROUND

On May 2, 1985, the Internal Revenue Service ("IRS") served a summons demanding that Darwin Construction Company appear before it and produce to Special Agent Gail Kohorst its corporate business records in support of the IRS investigation into the possible criminal liability of Darwin's president and sole shareholder Lester J. Robinson. The summons for production on May 31, 1985, was served upon Robinson and specifically listed 25 types of financial and general corporate information to be produced, but the inclusive language of the demand was broader: "[a]ll business records or documents pertaining to the ... corporation. The periods for which this request is made are 1980–1983, inclusive." On January 6, 1986, the government and Agent Kohorst filed this petition against Darwin to enforce the IRS summons. Robinson moved to intervene so that he could assert his right against self-incrimination. Robinson had asserted this Fifth Amendment right as to all documents in his possession or under his control when he appeared at the IRS offices on May 31, 1985. Darwin, in its response to the petition, also asserted that compliance with the summons would involve testimonial acts of production protected because of the incriminating nature of the documents. The Court held a "show cause" hearing on March 25, 1986, and directed respondent Darwin to comply with the summons and production of financial records. The Court's Memorandum and Order dated April 16, 1986, confirmed this ruling and granted Robinson's intervention motion based on an analysis of *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). On April 25, Judge Murnaghan of the Fourth Circuit Court of Appeals denied a stay, concluding, as did this Court, that enforcement of the order would not violate Robinson's Fifth Amendment rights.

On May 6, Darwin and Robinson filed a submission in compliance and request for amendment of the order, arguing that Darwin, through its comptroller Stanley Skweres, was able to produce only copies of the company's financial statements and corporate tax returns for the years 1980–83, without the assistance of Robinson. The Court then held a second show cause hearing on June 10, and again directed Darwin to produce the documents or to appear in court on June 23. At the third hearing June 23, 1986, the Court found Darwin in civil contempt and ordered: that it pay into the Registry of the Court $5,000 per day[2] on a weekly basis, and refrain

---

1. *Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB*, 547 F.2d 575, 581 (D.C.Cir.), *cert. den. sub. nom. Angle v. NLRB*, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977), describes the three-stage nature of the civil contempt process: issuance of an order; issuance of a conditional order finding contempt and threatening to impose a specific penalty, and "exaction of the threatened penalty if the purgation conditions are not fulfilled." The respondent Darwin has twice been given an opportunity to purge itself of contempt during the enforcement proceedings; thus, this fourth hearing forms the derivative third-stage contempt proceeding to exact the penalty upon a finding of failure to comply with the final order.

2. This was a finding of civil contempt because the Court's final order commanded Darwin to produce the documents or pay a fine. Thus, the $5,000 per day fine was conditioned on continued noncompliance and was coercive in nature.

from dissipating its assets, and that its motion for stay pending appeal be denied.

Respondent Darwin and intervenor Robinson appealed. In a panel decision issued April 27, 1987, 818 F.2d 30 (table), the Fourth Circuit Court of Appeals upheld the order and finding of contempt, and affirmed the Court's analysis, noting that the Fourth Circuit "has acknowledged that the act-of-production doctrine does affect the collective entity rule" but, reaffirming that " 'the corporation must comply with the summons through some other person.' " Slip Opinion at 4 (quoting *United States v. Lang*, 792 F.2d 1235, 1241 (4th Cir.), *cert. den.*, —— U.S. ——, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986)).

Meanwhile, respondent Darwin attempted to comply with the Court's final order of June 23, 1986. In its motion to vacate the writ of execution, Darwin recounts how it produced nine file boxes of financial records to the IRS within 24 hours of the Court's final order of June 23, and how it promptly provided additional documents on June 30 after Agent Kohorst indicated that certain items were missing from the June 24 production. Darwin claims that these items "had inadvertently been omitted from the production on June 24, 1986." Motion to vacate at 3. The government asserts the final production did not occur until July 2, 1986, and thus claims that Darwin was in contempt for nine days.[3] The factual issue now in dispute and the subject of the Court's ruling is whether Darwin's attempt amounted to substantial compliance with the order. The Court finds that it did not. First, however, the Court will review the basis of its vacation of the writ of execution.

Criminal contempt is distinguished by its purpose to vindicate a court's authority, and such a proceeding is attended by greater procedural protections. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir.1983); *Richmond Black Police Officers Ass'n. v. City of Richmond*, 548 F.2d 123 (4th Cir.1977); 18 U.S.C. § 401(3); Wright & Miller, *Federal Practice and Procedure* § 2960 at 583 (1973).

## WRIT OF EXECUTION IMPROVIDENTLY ISSUED

On August 4, 1986, the government requested a writ of execution on $45,000 and the writ was issued by the Clerk on August 5. Within thirty days of the issuance of the writ, respondent Darwin filed the motion to vacate this writ of execution as improperly issued and not warranted by the facts.

■ Fed.R.Civ.P. 69(a), as amended March 2, 1987, governs the execution upon judgment of the Court:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution ... shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....

The applicable Maryland statute (for Maryland circuit courts) assumes that there has already been a sum certain adjudged due.

> Upon the written request of a judgment creditor, the clerk of the court where the judgment was entered or is recorded shall issue a writ of execution directing the sheriff to levy upon property of the judgment debtor to satisfy a money judgment.

Md. Rule 2–641. Thus, until the Court finds that Darwin violated the June 23, 1986 order and must pay $5,000 per day for some or all of the nine day period of alleged contempt, there is no judgment which can be "executed." *See International Controls v. Vesco*, 535 F.2d 742, 744 (2nd Cir.1976) (execution is issued upon a final judgment). Thus, respondent's motion to

**3.** Actually, the later "production" occurred on July 3, 1986, however, the government admits that "Agent Kohorst consented to the July 3, 1986 production as being deemed to have been made on July 2, 1986." Government's opposition to motion to vacate at 5 n. 3. Thus, the government asserts nine days' instead of what might otherwise be found ten days' delay in compliance.

vacate the writ of execution was granted as improvidently issued.

## EVIDENCE REGARDING THE PERIOD OF NONCOMPLIANCE

As the moving party, the government has the burden of showing by clear and convincing proof that respondent failed to comply with the Court's final order. *N.A. Sales Co., Inc. v. Chapman Industries Corp.*, 736 F.2d 854, 857 (2nd Cir.1984) (violation of injunction). Upon meeting this initial burden, the respondent has the burden of raising a defense on an appropriate ground.[4] Darwin asserts that it acted in good faith and in substantial compliance with the June 23, 1986 order. Respondent has not argued that the imposition of a $5,000 per day fine would be unreasonable or arbitrary. *See N.A. Sales Co., supra,* 736 F.2d at 857. Indeed, coercive fines of this amount have been held within a district court's discretion. *Perfect Fit Industries v. Acme Quilting Co.*, 673 F.2d 53, 57–58 (2nd Cir.), *cert. den.*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). Darwin had more than adequate notice of the Court's intentions and it had more than the usual number of opportunities to purge itself from contempt before the final order.[5]

There were only two witnesses at the fourth hearing: co-petitioner Agent Kohorst and Darwin Construction Company's comptroller Stanley Skweres. IRS Agent Kohorst testifed that Skweres and Darwin's counsel Stan Mortenson delivered the nine file boxes of documents on June 24, 1986, and did not wait for Agent Kohorst to check the documents against the summons list. Rather than identifying or explaining the order of these documents, they left, asking only that she mail them a general receipt for the lot. According to her diary entry for June 25 (Respondent's Exhibit 2), Agent Kohorst "spent the day looking through records submitted by Darwin." She testified that she had been told to contact Darwin's counsel if there were any problems. Her diary entry also contains a notation that she made a telephone call to Mr. Turk on June 25, but that he was "not in." Agent Kohorst completed the inventory of documents the next day. On Friday, June 27, she talked to Mr. Turk by phone informing him that she had complied a list of missing documents which she would include in her letter to Darwin of the same date. Specifically, she found missing from the June 24 production the following categories of documents requested in the IRS summons:

1. general ledger for 9–30–80, 9–30–81 and 9–30–83;

2. accounts receivable ledgers for all years;

3. Accounts payable ledgers, 1980 and January to September, 1981;

4. cash receipts book, 1980 and January—February, 1981;

5. voucher register for all years;

6. check books for all years;

7. savings account books for all years;

8. charter;

9. bank statements, July to December, 1983;

10. cancelled checks, July to December, 1983;

11. IOU or loan records for all years;

12. list of employees and termination dates 1978, 1979 and 1983.

Petitioner's Exhibit 1 (letter to Darwin dated June 27, 1986).

---

**4.** Respondent Darwin does not raise the Fifth Amendment issue as a defense at this civil contempt stage of the proceedings. Nonetheless, the same burdens apply now as they did during the summons enforcement stage. This is implicit in another IRS summons decision involving the act-of-production defense, *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). *See* footnote 1 *supra.*

**5.** The Court noted this at the hearing on June 23, 1986: "Darwin's had adequate time to comply. This case has been pending since May of 1985. There have been previous proceedings and certainly Darwin must have known that the … contempt assessed here would be levied unless it complied. It has chosen not to do so in my opinion." Transcript at 42–43. This opinion was made in open court after a lengthy review of the history of the enforcement proceedings. Transcript at 37–42.

On June 30, Darwin produced bank statements and cancelled checks for the relevant period, an employee list for 1983 and loose sheets constituting the general ledger for September 30, 1983. Respondent's Exhibit 1, ¶ 9. (Kohorst's affidavit). Agent Kohorst told Darwin's counsel that the production was still incomplete and it was agreed that Skweres would help her identify the other items. Thus, on July 3, 1986,[6] Comptroller Skweres came to the IRS offices to identify the location of documents originally produced on June 24, but thought by Agent Kohorst to be missing entirely. Kohorst testified that Skweres was helpful and also brought some other documents: accounts receivable ledger, accounts payable ledgers for 1980 and January to May, 1981, cash receipts book, and employee lists for 1978 and 1979. *See* Kohorst affidavit ¶ 11.

Thus, Agent Kohorst claims that of the documents requested by the summons, Darwin produced items of categories 1, 20, 21, and 25 on June 30, and items of categories 3, 4, 6, and 25 on July 3, 1986.[7] However, the employee lists for 1978 and 1979 were not within the governing scope of the IRS summons which requested documents for the period 1980 to 1983.[8] Also, she testified that the previously submitted "job cost estimates" were considered adequate records for accounts receivable and general ledgers, thus the production of these items on July 3 was merely duplicative. Finally, Kohorst admitted that the cash receipts documents produced on July 3 were simply handwirtten summaries of cash deposits; she specifically admitted that although this summary of deposits was a different format than previously produced, it contained the same information.

On redirect examination, Kohorst emphasized that the cash receipts journal identified the source of cash deposits—information not contained in the bank account records. Furthermore, the "W–4" forms produced on July 3 contain Social Security numbers of employees which are not otherwise obtainable. But the W–4 forms were never requested and the cash flow information was essentially produced in another form. Similarly, the production of accounts data in the form of computer based records was sufficient. "Substantial compliance" with a court's order is measured by the actual production of documents which can be expected to yield the information sought by reasonable diligence. The Court did not intend to fine respondent $5,000 per day while the IRS was locating and translating financial records already produced. Although respondent was obligated to produce its records as they existed, it was not obligated to make the information conform to the format most desirable to the IRS. In this case, there is no allegation of intentional obfuscation by Darwin and, although it may have been Darwin's duty to explain its financial records, the Court will not include such a period of records' sifting and interpretation by the IRS in the computation of the duration of contempt. Agent Kohorst admitted that although she did not know it at the time of production, Darwin had produced documents on June 24 and June 30 which contained all the information requested by the IRS summons. The Court cannot make any finer distinctions based on the testimony offered by the government.

Respondent's witness, Comptroller Skweres, testified that Darwin had difficulty in complying with the Court's final order to produce because the company was in the middle of moving its offices on Friday,

---

6. *See* footnote 3 *supra.*

7. Any discrepency between the June 27 list of missing items and the itemizations of document categories produced on June 30 and July 3 is waived. The government admitted that production was considered completed by the last production; therefore, any items on the June 27 list still missing after July 3 are considered by the Court not to be at issue.

8. Respondent raised this issue in earlier briefing. Respondent's response to petition, filed March 6, 1986, at 10. The Court now rules that items specifically listed in the IRS summons which are outside the 1980 to 1983 period are not within the breadth of the summons. The summons should have specifically noted that the scope of the summons was for that period plus an earlier period if it was to be enforceable as to documents before the general period.

June 27. Thus, when Mr. Turk called him to relay Agent Kohorst's list of missing items, Skweres spent the weekend searching misplaced boxes in back rooms and located the documents that were produced on June 30. Other problems arose because of mislabeling of some of the ledger sheets themselves. Many of these documents were unbound, loose sheets and conveyed information already produced to the IRS in another form. Skweres also found and brought to the IRS offices documents he thought might be helpful, though they were not requested in the summons.

On cross-examination, Skweres explained that he did not know where the documents produced on June 24 had been kept and that when he accompanied Mr. Mortenson to deliver these nine boxes of documents he was aware only of the markings on the outside of the boxes. Upon the Court's own examination, Skweres admitted that the company at that time held only the previous two years of financial records and that the documents produced had not been kept at Darwin's offices. The Court is left only to conjecture that these documents were held by Darwin's counsel during the time Robinson claimed his Fifth Amendment privilege.

CONCLUSIONS

■ Darwin was the party required to produce the documents. Even if it did not have possession until the date of delivery, Darwin was not released from its obligation to ensure that all its records had been produced. The fact that the documents were found over the weekend of June 27 is proof that the documents were locatable with some effort. Respondent was required to make that effort. There is no allegation or evidence that the moving of Darwin's offices should be considered an extenuating circumstance. Nor has Darwin argued that there was any relevant confusion over the scope of the summons or that the scope of privileged claimed by Robinson caused Darwin to be unprepared to produce the documents pursuant to the

summons. It is obvious, and mandatory, that a party such as Darwin must prepare to produce all the documents requested before they are due. Darwin had from May 2, 1985 to collect the specific items sought by the IRS, and was on notice from the time of this Court's initial ruling on March 25, 1986, that it was required by this Court to produce them.

■ This Court finds that a line of decisions in the Ninth Circuit provide the appropriate rule regarding Darwin's substantial compliance defense. "If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986). See *U.S. v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984) ("all reasonable efforts" required for substantial compliance) (quoting *U.S. v. Rizzo*, 539 F.2d 458, 465 (5th Cir.1976), and *U.S. v. Ryan*, 402 U.S. 530, 534, 91 S.Ct. 1580, 1583, 29 L.Ed.2d 85 (1971)); *United States Steel Corp. v. United Mine Workers, District 20*, 598 F.2d 363, 368 (5th Cir.1979); *Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union*, 531 F.2d 617, 621 (D.C.Cir.1976) (substantial compliance is a defense; good faith may mitigate the penalty); *Halderman v. Pennhurst State School and Hospital*, 526 F.Supp. 414, 422 (E.D.Pa.1981) (no contempt where defendants "acted diligently and with steadfast purpose to comply"); Halderman, 533 F.Supp. 631, 636, *aff'd*, 673 F.2d 628 (3rd Cir.1982), *cert. den.* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712. Darwin's substantial compliance defense fails as to the six-day period June 24 to June 30, 1986, because they did not take "all reasonable steps" to comply with the Court's order of June 23. Thus, its argument that items produced on June 30 were inadvertently omitted from the June 24 production is unhelpful. Darwin's preferred good faith defense also must be rejected.[9]

---

**9.** Some circuits have held that willfulness is not an element of civil contempt and therefore its absence is no defense. *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93

L.Ed. 599 (1949); *Donovan v. Enterprise Foundry,* 751 F.2d 30, 38 (1st Cir.1984); *TWM Manufacturing Co. v. Dura,* 722 F.2d 1261, 1272 (6th Cir.1983); *Fortin v. Commissioner of Massachu-*

Skweres' ignorance as to the contents of the nine boxes hurriedly dumped at Agent Kohorst's office without identification or even concern regarding their completeness does not show good faith compliance with the Court's third order to produce documents listed in a year-old summons.

The Court does accept Darwin's substantial compliance defense as to the three-day period June 30 to July 2, 1986, because the information sought by the IRS had been produced or was beyond the scope of the summons. The Court need not address Darwin's theory that the degree of contempt should be measured by the volume of documents involved. The fact that only a few items were missing from the June 24 production does not excuse their absence when Darwin had extensive opportunity to ensure complete production and notice that it would be required. Although the summons requested certain specified documents, ultimately the Court must look to the substance and not the form of the information provided to the IRS. It is this analysis which leads the Court to reject Darwin's "volume theory" and yet accept substantial compliance for the latter three-day period.

### ORDER

In accordance with the attached Memorandum, it is this 4th day of February, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That it is the judgment of the Court that Darwin Construction Company was in civil contempt of this Court for six days, June 24, 1986 to June 30, 1986. Pursuant to the Court's Order of June 23, 1986, it is ORDERED that the respondent, Darwin Construction Company, pay into the Registry of the Court the sum thirty thousand dollars ($30,000.00) within fourteen (14) days of this date.

setts Dep't. of Public Welfare, 692 F.2d 790, 796 (1st Cir.1982); Halderman v. Pennhurst State School and Hospital, 533 F.Supp. 631, 636 (E.D. Pa.1981), aff'd, 673 F.2d 628 (1982), cert. den., 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984); Oil, Chemical and Atomic Workers, supra, 547 F.2d at 581.

Other courts hold that good faith is a defense to civil contempt. Consolidation Coal Co. v. Local 1702, United Mineworkers of America, 683 F.2d 827, 832 (4th Cir.1982) (good faith is defense to contempt in a labor dispute back-to-work order); U.S. v. Baker, 641 F.2d 1311, 1317 (9th Cir.1981) (good faith is generally a defense, but indifference and delay are not); Richmond Black Police Officers Ass'n., supra, 548 F.2d at 129.

The Court rejects the good faith defense on the facts in this case and therefore need not resolve this conflict among the appellate courts.