**UNITED STATES and Special Agent Gail R. Kohorst of the Internal Revenue Service, Plaintiffs–Appellees,**

v.

**DARWIN CONSTRUCTION COMPANY, INC.; Lester J. Robinson, Defendants–Appellants.**

No. 88–3066.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1988.

Decided May 8, 1989.

William Anthony Whitledge (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, Tax Div., Dept. of Justice, Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiffs-appellees.

Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

Darwin Construction Company and its president and sole shareholder, Lester J. Robinson, appeal from an order of the district court which imposed a $30,000 civil contempt fine against Darwin Construction Company,[1] and from the district court's subsequent denial of its motion to set aside or reduce the fine.[2] For the reasons set forth below, we modify the district court's assessment of the civil contempt fine, and as modified, we affirm the assessment.

I.

On May 2, 1985, the Internal Revenue Service ("IRS") served a summons on Lester J. Robinson ("Robinson") demanding that Darwin Construction Company ("Darwin") produce to IRS Special Agent Gail Kohorst twenty-five specified categories of corporate business records, as well as "[a]ll business records or documents pertaining to the corporation" during the period from 1980 to 1983. The summons for production was issued pursuant to an IRS investigation of Robinson's civil and criminal tax liabilities. In response to the summons, Darwin's counsel informed the IRS that Robinson had asserted his fifth amendment privilege and that Robinson refused to produce the business records.[3] On January 6,

David Irving Gelfand (R. Stan Mortenson, Randall J. Turk, Miller, Cassidy, Larroca & Lewin, Price O. Gielen, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on brief), for defendants-appellants.

1. *United States v. Darwin Constr. Co., Inc.,* 679 F.Supp. 531 (D.Md.1988) (*"Darwin I"*).

2. *United States v. Darwin Construction Co.,* 680 F.Supp. 739 (D.Md.1988) (*"Darwin II"*).

3. Robinson took refuge by invoking the "act of production" doctrine. *See United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In *United States v. Lang,* 792 F.2d 1235 (4th Cir.), *cert. denied,* 479 U.S. 985, 107 S.Ct.

574, 93 L.Ed.2d 578 (1986), this circuit indicated that in certain limited circumstances, a sole shareholder could have a fifth amendment privilege against being personally compelled to produce corporate documents if the very act of production would constitute self-incriminating testimony. *Id.* at 1240. In those rare cases, however, the corporation must produce the summoned records through another person. *Id.* at 1241. In *Braswell v. United States,* — U.S. —, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), the

1986, the IRS and Special Agent Kohorst petitioned the district court for enforcement of the summons, and Robinson moved to intervene as a defendant so that he could assert his fifth amendment privilege. Darwin asserted that compliance with the summons would necessitate testimonial acts of production that were protected under Robinson's privilege.

Following a "show cause" hearing on March 25, 1986, the district court granted Robinson's motion to intervene and ordered Darwin to comply with the IRS summons. Defendants moved for a stay of the order enforcing the summons pending appeal. The district court denied the stay. On appeal, the stay was denied by Judge Murnaghan, who held that enforcement of the court order would not violate Robinson's fifth amendment privilege. As a result of this April 25, 1986 order, Darwin produced some documents, and on May 6 Darwin and Robinson filed a submission in compliance and request for amendment of the order, arguing that Darwin's Comptroller, Stanley Skweres, could produce only a limited number of documents without Robinson's assistance.

On June 10, 1986, the district court held a second hearing to explore Darwin's reasons for having produced documents in only two of the twenty-five categories. The court found that Darwin's showing of inability to comply with the summons was inadequate and ordered it to produce the records by June 20 or appear in court on June 23. Darwin did not produce additional records. At the third hearing on June 23, the district court found that the summoned records were extant, that Darwin, as a corporation, did not have a fifth

amendment privilege, and that Darwin had not adequately explained why it had failed to produce the records. The district court held Darwin in civil contempt and ordered it fined $5,000 per day on a weekly basis,[4] ordered it to refrain from dissipating its assets, and denied its motion for stay pending appeal. Darwin and Robinson appealed the district court's decision to this court.[5]

Meanwhile, Darwin attempted to comply with the June 23 order. On June 24, Comptroller Skweres and one of Darwin's attorneys delivered nine boxes of documents to the IRS. After a survey of the records, Special Agent Kohorst determined that documents were missing from twelve of the twenty-five categories. After Special Agent Kohorst told Darwin of its deficiencies, Darwin conducted another search of its offices and discovered summoned documents such as the 1983 employee list, checks and bank statements for July through December 1983, and the 1980 ledger. These documents were produced to the IRS on June 30.

On August 5, 1986, the IRS obtained a writ of execution from the clerk of the district court to collect the fine, which it determined to be $45,000 ($5,000 per day for the nine days from Darwin's production of documents on June 24 to the IRS's completion of the inventory on July 2, 1986). Darwin moved to vacate the writ, and on January 22, 1988 the district court held the fourth hearing in this case. In a Memorandum and Order dated February 4, 1988, *United States v. Darwin Constr. Co., Inc.*, 679 F.Supp. 531 (D.Md.1988) (*"Darwin I"*), the court granted Darwin's motion to vacate the IRS's writ of execution because the writ was issued before there was a

Supreme Court held that "a corporate custodian is not entitled to resist a subpoena on the grounds that his act of production will be personally incriminating." *Id.* 108 S.Ct. at 2295.

**4.** The court's final order instructed Darwin to produce the documents or pay a fine; thus the fine was coercive in nature and squarely within the bounds of civil contempt. *See Darwin I,* 679 F.Supp. at 532, n. 1 and n. 2.

**5.** The district court's order and finding of contempt were upheld by this court, which noted that corporations could not resist summonses

by asserting the fifth amendment privilege against self-incrimination. In those instances where the production of corporate documents would be tantamount to testimonial self-incrimination, then "'the corporation must comply with the summons through some other person.'" *United States v. Darwin Constr. Co., Inc.; Lester J. Robinson,* 818 F.2d 30 (table), No. 86-3992, slip op. at 4 (4th Cir. April 24, 1987), *quoting United States v. Lang,* 792 F.2d 1235, 1241 (4th Cir.), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986).

judgment regarding the violation of the court's final contempt order. The court, however, found that Darwin had not been in substantial compliance with the court's order for six days—the period between June 23 and June 30,[6] because it did not take "all reasonable steps" to comply with the court's order of June 23, 1986. *Darwin I,* 679 F.Supp. at 536. The district court stated:

> Darwin was the party required to produce the documents. Even if it did not have possession until the date of delivery, Darwin was not released from its obligation to ensure that all its records had been produced. The fact that the documents were found over the weekend of June 27 is proof that the documents were locatable with some effort. Respondent was required to make that effort.... It is obvious, and mandatory, that a party such as Darwin must prepare to produce all the documents requested before they are due. *Id.*

In sum, the district court found that Darwin's production of records on June 30 did not cure the lack of production prior to June 23, and the court rejected Darwin's proffered substantial compliance defense and good faith defense for the six-day period between June 23 and June 30. *Id.* at 536–37. The court assessed a $5,000 per day fine for each of the six days Darwin had been in contempt.

Darwin moved to set aside or reduce the fine, pursuant to Fed.R.Civ.P. 59(e). The district court denied the motion but extended the time for payment of the fine. *United States v. Darwin Constr. Co.,* 680 F.Supp. 739 (D.Md.1988) (*"Darwin II"*). Darwin paid the $30,000 fine and filed this appeal, challenging the district court's finding that Darwin remained in civil contempt for the six days after the entry of the contempt order.

## II.

In this appeal, Darwin and Robinson make three arguments to support their contention that the district court committed reversible error in assessing the $5,000 per day civil contempt fine for six days. First, they argue that the nature of the fine is essentially punitive, because it impermissibly punishes Darwin for its failure to gather the documents prior to the June 23 contempt order. Second, they argue that the district court held them to an impermissibly high standard of perfect compliance with the summons. Third, they argue that the district court abused its discretion in assessing the fine and that it failed to make any findings of fact to support its judgment that Darwin did not immediately come into substantial good faith compliance. We deal with these arguments in the order in which they were raised.

## III.

■ Appellants assert that the district court relied on Darwin's alleged inaction prior to the contempt order to convert the contempt judgment to punishment; therefore they characterize the $5,000 per day fine as a criminal contempt fine. Darwin claims that it could not produce the documents earlier than June 24 because Robinson was intent on testing his fifth amendment privilege and had control of the documents until June 23, the day the contempt order was issued. The substitute custodian of the documents, Comptroller Skweres, took possession of the documents only after the issuance of the contempt order and produced them as soon as he could. The gravamen of appellant's argument is that they are in effect being punished for Robinson's assertion of his fifth amendment privilege and thus the fine is of a criminal nature because it seeks to punish for past behavior. *See United States v. United Mine Workers,* 330 U.S. 258, 302, 67 S.Ct. 677, 700–01, 91 L.Ed. 884 (1947); *In re Kave,* 760 F.2d 343, 351 (1st Cir.1985).

While criminal contempt proceedings punish for past wrongful conduct, "civil

---

**6.** The court held that on June 30, Darwin had produced documents that contained all the information requested by the IRS summons. *See Darwin I,* 679 F.Supp. at 537. The district court attached no significance to the fact that Special Agent Kohorst did not finish inventorying the records until July 2, the date the IRS argued Darwin had come into substantial compliance with the summons.

contempt proceedings are for the purpose of coercing compliance with the orders of the court and/or to compensate complainant for losses sustained by defendant's noncompliance." *United States v. Professional Air Traffic Controllers,* 678 F.2d 1, 4 (1st Cir.1982) (emphasis omitted), *citing United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); *G & C Merriam Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29, 40–41 (1st Cir.1980). *See also Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 400 (5th Cir.1987) (citations omitted); *In re Howe,* 800 F.2d 1251, 1253 (4th Cir.1986); *Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 458 (11th Cir.1984); *Consolidation Coal Co. v. Local 1702, United Mine Workers of America,* 683 F.2d 827, 830 (4th Cir.1982); *Windsor Power House Coal Co. v. District 6, United Mine Workers of America,* 530 F.2d 312, 316 (4th Cir.), *cert. dismissed,* 429 U.S. 876, 97 S.Ct. 199, 50 L.Ed.2d 159 (1976); *Carbon Fuel Co. v. United Mine Workers of America,* 517 F.2d 1348, 1349–50 (4th Cir. 1975).

The difference between civil and criminal contempt merits an inquiry into the purpose of the present contempt order. The district court specifically stated that "the $5,000 per day fine was conditioned on continued noncompliance and was coercive in nature." *Darwin I,* 679 F.Supp. at 532 n. 2. As the Supreme Court recently stated: "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks on Behalf of Feiock*

*v. Feiock,* 485 U.S. 624, ——––——, 108 S.Ct. 1423, 1429–30, 98 L.Ed.2d 721 (1988). Certainly, assessing a $5,000 per day fine provides a party with economic incentive to comply with a contempt order; by assessing the fine, the district court obviously hoped to provide precisely the type of incentive needed to spur Darwin into action.[7] When a judgment imposes a conditional penalty for the obvious purpose of compelling the recalcitrant party to obey the court, the action is one for civil contempt. *See Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966). Thus, we find no merit in appellants' assertion that the fine was in effect punitive, rendering the contempt as criminal contempt.[8] Clearly, the purpose of the fine was to compel Darwin to comply with the IRS summons. *See United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). We hold that the district court's contempt order was indisputedly civil in nature.

## IV.

■ Next, the appellants argue that the district court improperly held Darwin to a standard of perfect compliance with the summons. It is abundantly clear, however, from the two district court opinions in this matter, that the court held Darwin to the standard of good faith substantial compliance with the summons. *Darwin I,* 679 F.Supp. at 536–37; *Darwin II,* 680 F.Supp. at 740–41; *see generally Consolidation Coal Co. v. Local 1702, United Mine Workers of America,* 683 F.2d 827, 832 (4th Cir.1982) (a good faith attempt to comply, as well as substantial compliance or the inability to comply, can be defenses to a civil contempt order). To avoid a finding of contempt, Darwin had "to make in good faith all reasonable efforts to comply with

7. We attach no significance to the fact that the fine was not paid to the opposing party, but to the court. Under the facts of this case, the overall nature of the contempt order clearly was coercive. *See In re Howe,* 800 F.2d at 1253 n. 1.

8. The appellants in this case vigorously argue that there are only two kinds of contempt sanctions: punitive and civil. We would note, however, that at least one other court has made a more refined and workable distinction, holding that there are three types of contempt sanctions:

punitive, compulsory, and compensatory. *See United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). While punitive sanctions are criminal contempt sanctions, both compulsory and compensatory sanctions are civil in nature. *Id.* Applying the *Asay* analysis to the present case, the district court's assessment of a $5,000 per day fine, conditioned on compliance with the IRS summons, clearly was a compulsory civil sanction.

[the summons]." *United States v. Ryan*, 402 U.S. 530, 534, 91 S.Ct. 1580, 1583, 29 L.Ed.2d 85 (1971). The district court correctly noted that "Darwin was required to comply substantially with the Court's order," and added in explication: "Substantial compliance is found where 'all reasonable steps' have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken." *Darwin II*, 680 F.Supp. at 740. The district court found as a fact that Darwin fell far short of substantially complying with the summons. First, Darwin had not asserted that the documents missing from the June 24 production were beyond its possession or control, and second, Darwin had made no special effort to ensure that the June 24 production was complete. In sum, the court's finding that compliance was insubstantial was grounded in "Darwin's inattentiveness after the June 23 order was issued." *Darwin II*, 680 F.Supp. at 741. The district court found that Darwin did not take "all reasonable steps" to ensure complete production until *after* it was notified by Agent Kohorst that some documents were still unproduced and it made additional efforts to find the missing documents. *Id.* at 740–41. Clearly, Darwin did not take "all reasonable steps" to comply with the court order, *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986), nor did it make "all reasonable efforts." *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984) (per curiam) (citations omitted); *see also United States v. Roberts*, 858 F.2d 698, 702 (11th Cir.1988). In sum, there is no merit to Darwin's argument that the district court held it to the unreasonable standard of "perfect compliance."

Darwin also argues that the court impermissibly considered Darwin's inadequate preparation for producing documents in determining its non-compliance with the IRS summons. *See Darwin II*, 680 F.Supp. at 740. Darwin argues, in effect, that the court did not give it time to bring itself into substantial compliance. We would note, however, that Darwin had from May 2, 1985 to collect the documents, and knew on March 26, 1986 that it was required to

produce them. It is clear from the record that Darwin made no efforts to comply with the summons until after June 23, 1986 and thus has only itself to blame for its haphazard production of documents.

 In addition, Darwin argues that the district court's order did not adequately spell out what it required of Darwin. This argument is ridiculous. The May 2, 1985 IRS summons requested production of 25 specific types of documents for the years 1980–1983, inclusive. The court's orders merely enforced this summons—it required no more of Darwin than what was requested of it in May, 1985. Moreover, Darwin is mistaken in arguing that it could not know if any documents produced pursuant to the summons were missing until Special Agent Kohorst completed her inventory. When an IRS summons is served, the rights and obligations on the party on whom the summons is served become fixed. *United States v. Rue*, 819 F.2d 1488, 1493 (8th Cir.1987); *see also United States v. Asay*, 614 F.2d 655, 660 (9th Cir.1980) ("An IRS summons imposes a duty to retain possession of summoned documents pending a judicial determination of the enforceability of the summons."). Clearly, Darwin had the responsibility for producing documents responsive to the summons—in fact, the district court, in its opinion, specifically found that Comptroller Skweres was both ignorant of and apparently unconcerned about the contents of the nine boxes of documents dumped in the IRS office on June 24. *See Darwin I*, 679 F.Supp. at 537; *see also Darwin II*, 680 F.Supp. at 741 (characterizing the initial document production as "grounded in indifference and ignorance as to the completeness"). It is disingenuous of Darwin to argue on appeal that it did not know exactly which records were to be produced.

 Next, Darwin claims that it could not produce the records until Robinson gave them up on June 23, 1986. Yet Darwin's reliance on Robinson's fifth amendment claim is misplaced. Recently, in *Braswell v. United States*, —— U.S. ——, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), the Supreme Court noted that the fifth amend-

ment does not apply to a corporation or to a corporation's papers; agents of a corporation hold corporate documents in a representative rather than a personal capacity. *Id.* 108 S.Ct. at 2291. Thus, "a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government." *Id.* Robinson, as custodian of Darwin's documents, had an obligation to produce the summoned records. In the alternative, if production of the documents would have incriminated Robinson, Darwin had an obligation to recover the records from Robinson in order to comply with the summons. *See, e.g., United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984) (taxpayer held to have not made all reasonable efforts to comply with summons when "other avenues for obtaining the material were never explored"). Thus, that the documents were in Robinson's possession until June 23 does not excuse Darwin's failure to produce the documents before that date.

### V.

■ Lastly, Darwin argues that the district court abused its discretion in assessing the $5000 per day fine for the six-day period. In effect, Darwin argues that it should not be ordered to pay $30,000 in contempt fines when it inadvertently failed to produce a small number of requested records. Yet as the district court stated: "The fact that only a few items were missing from the June 24 production does not excuse their absence when Darwin had extensive opportunity to ensure complete production and notice that it would be required." *Darwin I,* 679 F.Supp. at 537. Moreover, Darwin's argument misses the point. The district court had set the daily fine at $5000 "based upon the non-complying party's previous reluctance to obey the court's directives, the corporate character of the non-complying party, and the injury to justice which further contempt would invite." *Darwin II,* 680 F.Supp. at 741. The threat of a $5000 per day penalty provided the necessary impetus to Darwin to finally comply with the summons.

We note that "a district court has broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions." *N.A. Sales Co., Inc. v. Chapman Industries Corp.,* 736 F.2d 854, 857 (2d Cir.1984), *citing United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); *Vuitton et Fils, S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979). Thus, the court's determination of the appropriate sanction will only be disturbed upon a clear showing of abuse of discretion. *N.A. Sales Co., Inc.,* 736 F.2d at 857, *citing Perfect Fit Industries v. Acme Quilting Co.,* 673 F.2d 53 (2d Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); *see also United States v. Hayes,* 722 F.2d 723, 725 n. 1 (11th Cir.1984); *Folk v. Wallace Business Forms, Inc.,* 394 F.2d 240, 244 (4th Cir.1968). We believe that the district court did not abuse its discretion in assessing Darwin a $5000 per day fine for each day it refused to comply with the IRS summons. The court found as a fact that Darwin had not taken "all reasonable steps" to comply with the IRS summons. *Darwin I,* 679 F.Supp. at 536 (citation omitted). Although Darwin claims that the district court did not make any express findings of fact to support its conclusion that Darwin did not take all reasonable steps in its document production, the facts set forth in the two district court orders are replete with Darwin's dilatory tactics, and we hold that they more than adequately support the district court's finding of contempt. In view of Darwin's continuous refusal to comply with the IRS summons, first issued in May 1985, the four hearings, the interlocutory appeal to Judge Murnaghan, and the previous appeal to this court, it is more than evident that the district court believed that Darwin would only comply with its order if it had an economic incentive to do so. The effect of the fine was to coerce compliance. However, two days of the six for which the District Court imposed a fine of $5,000 per day were business holidays (Saturday and Sunday). We think it was improper to fine it for failure to produce

records on those two business holidays. We accordingly modify the fine imposed by eliminating those two days, thereby reducing the fine to $20,000. As so modified, we affirm the judgment finding Darwin in contempt of court and affirm the fine in the modified amount of $20,000.