**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-1655

UNITED STATES OF AMERICA,

                Petitioner - Appellee,

      v.

MELINA ALI,

                Respondent - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge.  (8:13-cv-03398-PWG)

Argued:  September 12, 2017                Decided:  November 3, 2017

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

**ARGUED:** Daniel Adam Bushell, BUSHELL LAW, P.A., Fort Lauderdale, Florida, for Appellant.  Geoffrey John Klimas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Michael S. Rothman, LAW OFFICE OF MIKE ROTHMAN, Rockville, Maryland, for Appellant.  Caroline D. Ciraolo, Principal Deputy Assistant Attorney General, Diana L. Erbsen, Deputy Assistant Attorney General, Thomas J. Clark, Robert W. Metzler, Douglas C. Rennie, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Following an investigation of Melina Ali's income tax liability, the Internal Revenue Service issued a summons to her seeking various documents. When Ali failed to produce certain documents, the district court held her in contempt. Ali appeals, and for the reasons that follow, we affirm.

I.

This case involves a complex factual and procedural history, which we need only briefly summarize. In 2013, the IRS began investigating Ali's federal income tax liability. The IRS issued an administrative summons to Ali, directing her to appear and produce documents related to financial accounts and corporate records for several business entities. Ali appeared but asserted her Fifth Amendment privilege and refused to produce any documents or provide any substantive testimony.

The Government petitioned to enforce the summons and Ali moved to quash, again asserting her Fifth Amendment privilege against self-incrimination. After a show-cause hearing, the district court determined that the Government had made a *prima facie* case for enforcement with respect to many of the requested documents. The court initially reserved decision on the Fifth Amendment privilege with respect to "records relating to foreign bank accounts" and "corporate records for domestic or foreign entities possessed or controlled by Ali in a representative capacity," but ultimately held the Fifth Amendment privilege did not protect those records. Accordingly, the district court ordered Ali to produce those documents ("Enforcement Order"). Ali noted an appeal to

3

challenge the denial of her Fifth Amendment claim but withdrew that appeal before this court could consider it.

In response to the Enforcement Order, Ali produced hundreds of pages of documents, but almost all of them related to her *domestic* bank accounts. With respect to her foreign bank accounts and corporate records — all clearly subject to the Enforcement Order — Ali produced only four pages of information: a one-page letter from a foreign bank dated prior to the summons stating that Ali's signature did not match the signature on file for the account in question, and three pages of correspondence showing Ali had power of attorney for one of the corporate entities. The Government, believing Ali had not fully complied with the Enforcement Order, sought an order requiring Ali to show cause why she should not be held in contempt.

In her briefing and at the show-cause hearing, Ali, through counsel, again asserted her Fifth Amendment privilege. Ali also relied for the first time on the defense of nonpossession, claiming that she had "produced the only records . . . in her possession or custody." Additionally, she claimed that the IRS had failed to prove by clear and convincing evidence that she possessed "any responsive documents that have not already been produced."

The district court ruled that the Government had met its burden of establishing a *prima facie* showing of contempt. The court found that Ali knowingly or constructively violated the Enforcement Order by failing to produce responsive documents over which she had at least constructive possession or control. The court credited the Government's evidence demonstrating that Ali was a beneficial owner of the foreign accounts and that

4

she served in a "representational capacity" for the various corporations, which established a presumption that Ali possessed documents related to those accounts and corporations. The court also found that the Government did not have to show that Ali actually possessed specific records she had not yet produced and that Ali could not assert her nonpossession defense for the first time during the contempt proceeding.

The burden then shifted to Ali to demonstrate that she had "made in good faith all reasonable efforts to comply" with the Enforcement Order. Her effort to meet this burden consisted only of resubmitting an unsworn declaration from one of her attorneys that predated the enforcement order and listed the documents that had been produced on Ali's behalf. The court found this declaration insufficient, noting that although the attorney could testify as to what *she* had done on Ali's behalf, the attorney could not testify as to what *Ali* had done to demonstrate her good faith. The court explained that Ali had to "produce evidence (not argument by counsel)" to establish that she had made reasonable efforts to comply with the Enforcement Order. The district court credited the Government's suggestion of "reasonable efforts" Ali could have taken to obtain the requested records, including contacting the banks that possessed these records, contacting family members with access to the bank accounts, or stating under oath that she had made reasonable attempts to obtain the records. Because Ali failed to take any of these steps, the court ruled that she had not satisfied her burden of production and held her in civil contempt.

Ali timely noted this appeal of the contempt order. We review a district court's civil contempt order for abuse of discretion. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

## II.

The Supreme Court's decision in *United States v. Rylander*, 460 U.S. 752 (1983), guides the resolution of this case. There, the IRS issued a summons ordering Rylander to provide testimony and produce various documents. *Id.* at 754. Rylander did not comply, so the district court ordered Rylander to appear and produce the requested records. *Id.* When Rylander failed to comply with the court's enforcement order, the court initiated civil contempt proceedings. *Id.* During the contempt proceeding, Rylander asserted for the first time that he did not possess the documents in question. *Id.* The district court found this defense inadequate and held Rylander in contempt. *Id.* at 755. The Supreme Court affirmed the district court, holding that if a defendant wishes to contest a summons on the ground that he lacks "possession or control" of the subpoenaed records, he must raise that issue at the enforcement stage — it cannot "be raised for the first time in a contempt proceeding." *Id.* at 757. That is because a taxpayer must assert all applicable defenses at the enforcement stage; the only exception is "*present* inability to comply" i.e., an inability to comply that arises after the enforcement proceeding and exists at the time of the contempt proceeding. *Id.* at 756–57.

In *Rylander*, the Supreme Court found the defendant had failed to meet his burden of establishing "present inability to comply." The Court found that Rylander

6

presumptively still possessed the documents subject to the enforcement order. The Court credited the district court's findings that "Rylander possessed the documents [he had been ordered to produce] at the time of the enforcement proceeding" and that "as president or other corporate officer [Rylander] had possession or control, or both, of the books and records of said corporations." *Id.* at 761 n.3 (second alteration in original) (internal quotation marks omitted). The Court found that, in combination, these facts established "an inference of continuing possession" at the time of the contempt proceeding. *Id.* Accordingly, it was immaterial that the district court "did not state explicitly that Rylander still possessed the documents at the time of the contempt proceeding" as "such a finding [was] plainly implicit." *Id.*

Although Rylander testified at the contempt hearing that he did not currently possess the documents in question and therefore could not comply with the enforcement order, he asserted his Fifth Amendment right rather than submitting to cross-examination. *Id.* at 757–58. The Supreme Court rejected the notion that Rylander could satisfy his burden of production by invoking the Fifth Amendment. The contempt hearing "was a time for testimony," and the privilege against self-incrimination, the Court explained, is not "a substitute for evidence that would assist in meeting [the] burden of production" for Rylander's defense of present inability to comply. *Id.* at 758. For these reasons, the

7

Supreme Court held that Rylander had not satisfied his burden and affirmed the district court's contempt order. *Id.* at 759–62.[1]

With these principles in mind, we turn to Ali's arguments.

III.

Ali principally contends that the district court "extended *Rylander* beyond its moorings." Appellant Br. 26. She seeks to escape the force of that case with three arguments. All three are meritless.

First, Ali maintains that because she asserted her Fifth Amendment privilege against self-incrimination during the enforcement proceeding, she could not also assert a defense of nonpossession at that time. Appellant Reply Br. 4. But *Rylander* makes clear that "lack of possession or control of records . . . may not be raised for the first time in a contempt proceeding." 460 U.S. at 757. To hold otherwise, the Court explained, would eliminate the "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and

---

[1] The Fifth Circuit rejected a similar claim even prior to *Rylander*. *See United States v. Hankins*, 565 F.2d 1344 (5th Cir. 1978). Hankins produced "various books and records" which the IRS demonstrated were presumptively incomplete. *See id.* at 1351. But he failed to assert nonpossession at the enforcement stage and, at the time of the contempt proceeding, "made no showing whatsoever that he [did] not [presently] possess the records." *Id.* at 1352. Instead, Hankins argued that the Government had to "prove that the records are in existence and in the possession of the respondent before any defense of non-possession need be raised." *Id.* at 1352. The Fifth Circuit rejected these contentions and affirmed the order of contempt.

8

thus become a retrial of the original controversy." *Id.* at 756 (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) (internal quotation marks omitted)). Ali did not raise her nonpossession defense at the enforcement stage and was therefore precluded from raising that defense at the contempt stage.

That Ali invoked her Fifth Amendment privilege at the enforcement and contempt stages, while Rylander asserted this privilege only at the contempt stage, does not alter this outcome. Allowing Ali to invoke the Fifth Amendment to satisfy her burden of production at the contempt stage — even if she previously asserted that right at the enforcement stage — would still do exactly what *Rylander* said not to do: "convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." *Id.* at 758.

Ali's second and third arguments turn on the fact that, unlike Rylander, she produced "some documents in response to the summons." Appellant Br. 25. Ali contends that once a defendant produces *some documents* in response to an enforcement order, she cannot be held in contempt unless the *complainant* proves by clear and convincing evidence that the defendant failed to produce *all* the responsive documents in her possession or control. *Id.* She argues that the district court "erroneously placed the burden on Ali to disprove a portion of the IRS's prima facie case" by requiring *her* to make an affirmative showing that she had produced all responsive documents in her possession or control. *Id.* at 23–24.

9

These arguments also fail. In a contempt proceeding, the complainant bears the initial burden of establishing non-compliance with an existing order — here, the Enforcement Order. *See Ashcraft*, 218 F.3d at 301. An enforcement order establishes a presumption that the defendant possesses responsive documents. *See Rylander*, 460 U.S. at 761 n.3. Thus, even when a defendant produces *some* documents in response to an enforcement order, the complainant need not show that the defendant has *actual possession* of *other* responsive documents that she failed to produce. Rather, because failure to produce documents presumptively within the defendant's possession constitutes an actual or constructive violation of an existing enforcement order, it is enough for the complainant to demonstrate, by clear and convincing evidence, that the defendant's production was *presumptively* incomplete. *See id.* This can be done, for example, by demonstrating that any complete production would necessarily include certain types of documents — e.g., a production of "bank records" that omits bank statements is presumptively incomplete. The complainant need not identify each missing bank statement and need not prove that the defendant has access to that specific statement.

Once the complainant establishes that the defendant violated the Enforcement Order, the burden shifts to the *defendant* (here, Ali) to demonstrate that she made "in good faith all reasonable efforts to comply" with the enforcement order. *See United States v. Darwin Const. Co.*, 873 F.2d 750, 754–55 (4th Cir. 1989) (quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971) (internal quotation marks omitted)); *Grand Jury Subpoena Duces Tecum v. United States*, 868 F.2d 1014, 1016 (8th Cir. 1989) (rejecting defendant's argument that "the government had the burden of proving at the contempt

10

hearing that the company had access to the [documents] when it received the subpoena"). Thus, the district court correctly applied the relevant legal standards in assessing the Government's and Ali's respective burdens.

In sum, none of the bases on which Ali attempts to distinguish *Rylander* are persuasive.

## IV.

Ali also maintains that the district court "abused its discretion in concluding that the IRS had submitted clear and convincing evidence of a violation of the production order." Appellant Br. 21. To establish civil contempt, a complainant must prove the following by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*Ashcraft*, 218 F.3d at 301 (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D.Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)) (internal quotation marks omitted); *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).[2]

---

[2] To be clear and convincing, evidence must "place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

The first, second, and fourth elements of this test are not in dispute. The district court issued a valid decree requiring production of various foreign account documents and corporate records, which favored the IRS. *See Ashcraft*, 218 F.3d at 301. Ali was aware of the decree. *Id.* And the IRS suffered harm as a result of Ali's failure to comply with the decree. *Id.* Ali disputes only the third requirement: whether she violated the terms of the court's decree with respect to the foreign accounts and corporate records. Specifically, she contends that "the IRS failed to show that Ali had additional foreign account records that were not produced" and "failed to submit clear and convincing evidence that Ali possessed corporate records in a representative capacity that she failed to produce." Appellant Br. 29; Appellant Reply Br. 20.

The district court found that the IRS had met its burden of showing by clear and convincing evidence that Ali's production was presumptively incomplete. Ali did not assert a nonpossession defense at the enforcement stage; thus, the Enforcement Order was predicated on a presumption that Ali constructively or actually possessed those documents subject to the order. The IRS also established an "inference of continuing possession" from the enforcement proceeding to the contempt proceeding and showed that Ali had not produced all the responsive documents presumptively within her possession. *Rylander*, 460 U.S. at 761 & n.3.

Regarding foreign accounts, the IRS demonstrated that Ali was a beneficial owner of the foreign accounts and had received wire transfers from those accounts, meaning she presumptively possessed or could obtain access to the records related to those accounts.

12

But Ali produced only a one-page letter from a foreign bank dated prior to the summons stating that her signature did not match the signature on file for the account in question.

With respect to the corporate records, the Government submitted declarations and exhibits to demonstrate that Ali had power of attorney for one of the listed corporations and had served as secretary-treasurer for the other two. As a corporate officer, Ali is a presumptive custodian of corporate records unless she demonstrates otherwise. *Rylander*, 460 U.S. at 761 n.3 (noting that a finding of constructive possession was "plainly implicit in the court's conclusion that 'as president or other corporate officer [Rylander] had possession or control, or both, of the books and records of said corporations'" (alteration in original)). But Ali produced only three pages worth of corporate records. Thus, the IRS established that Ali had committed at least a constructive violation of the Enforcement Order by failing to produce documents presumptively within her possession or control.[3]

Once the IRS met its burden, the burden shifted to Ali to demonstrate that she had "ma[de] in good faith all reasonable efforts to comply with" the court's Enforcement Order. *Darwin Const. Co.*, 873 F.2d at 754–55 (quoting *Ryan*, 402 U.S. at 534) (internal quotation marks omitted). The district court found that Ali had not satisfied this burden.

---

[3] Although, as in *Rylander*, the district court "did not state explicitly that [the defendant] still possessed the documents at the time of the contempt proceeding," such a finding is "plainly implicit" given that Ali "possessed the documents at the time of the enforcement proceeding" and circumstances warrant "an inference of continuing possession." *Rylander*, 460 U.S. at 761 n.3.

13

A bare assertion of nonpossession cannot satisfy this burden. *See Rylander*, 460 U.S. at 757. Nor does the production of *some* responsive documents. The requirement is not to produce *some* documents, but to demonstrate "all reasonable efforts to comply" with the Enforcement Order. If Ali possessed only four pages of responsive documents, she had to demonstrate that, despite her good-faith efforts to obtain other responsive documents, she was unable to do so. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) (holding district court abused its discretion in finding defendant not guilty of contempt where he made "*some effort* to comply" with summons but not "all reasonable efforts").

Ali contends that she demonstrated her efforts to comply with the Enforcement Order via an unsworn declaration from one of her attorneys that predated the enforcement order and listed the documents her lawyer had produced on Ali's behalf. But this unsworn declaration contained no information about steps Ali had taken to comply with the Enforcement Order. The district court understandably found the declaration lacking. The court identified several steps Ali could have taken to satisfy her burden, such as stating under oath that she had made reasonable attempts to obtain the records. This was, after all, "a time for testimony." *Rylander*, 460 U.S. at 758 (commending district court for disregarding Rylander's "*ex parte* affidavit and uncross-examined testimony"). Ali failed to take any such steps, and so did not carry her burden.[4]

---

[4] Ali also could have offered evidence to demonstrate a change in circumstances from the time of the Enforcement Order such that the presumption of continuing possession was no longer valid. Because she failed to present any such evidence, she also could not establish a defense of *present* inability to comply. *See Rylander*, 460 U.S. at 756–57.

The district court did not abuse its discretion in finding Ali in contempt. Indeed, throughout this case, the court demonstrated a sure command of the facts and controlling legal principles and admirable patience in the face of Ali's repeated noncompliance.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

15