UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 98-1212(L)
(CA-95-187-BR3-7)

_____

Hurshel L. Ashcraft, et al,

                                                        Plaintiffs,

        versus

CONOCO, Incorporated,

                                              Defendant - Appellee,

Wilmington Star-News, Incorporated,

                                                        Appellant.

_____

O R D E R

_____

        The court amends its opinion filed July 6, 2000, as follows:

        On page 31, second full paragraph, line 2 -- the phrase "an
did not give ...." is corrected to read "and did not give ...."

                                        For the Court - By Direction


                                        /s/ Patricia S. Connor
                                                Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HURSHEL L. ASHCRAFT, et al.,
Plaintiffs,

v.

CONOCO, INCORPORATED,
Defendant-Appellee,

WILMINGTON STAR-NEWS,
INCORPORATED,
Appellant,

and

KAYO OIL COMPANY; TRIANGLE
FACILITIES, INCORPORATED,
Defendants.

No. 98-1212

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN
COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; NORTH
CAROLINA PRESS ASSOCIATION; THE
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
Amici Curiae.

HURSHEL L. ASHCRAFT, et al.,
Plaintiffs,

v.

CONOCO, INCORPORATED,
Defendant-Appellee,

KIRSTEN B. MITCHELL,
Appellant,

and

KAYO OIL COMPANY; TRIANGLE
FACILITIES, INCORPORATED,
Defendants.

                                      No. 98-1213

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN
COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; NORTH
CAROLINA PRESS ASSOCIATION; THE
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
Amici Curiae.

2

HURSHEL L. ASHCRAFT, et al.,
Plaintiffs,

v.

CONOCO, INCORPORATED,
Defendant-Appellee,

WILMINGTON STAR-NEWS,
INCORPORATED,
Appellant,

and

KAYO OIL COMPANY; TRIANGLE
FACILITIES, INCORPORATED,
Defendants.

No. 98-1448

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN
COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; NORTH
CAROLINA PRESS ASSOCIATION; THE
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
Amici Curiae.

3

HURSHEL L. ASHCRAFT, et al.,
Plaintiffs,

v.

CONOCO, INCORPORATED,
Defendant-Appellee,

KIRSTEN B. MITCHELL,
Appellant,

and

KAYO OIL COMPANY; TRIANGLE
FACILITIES, INCORPORATED,
Defendants.

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN
COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; NORTH
CAROLINA PRESS ASSOCIATION; THE
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
Amici Curiae.

No. 98-1449

4

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

KIRSTEN B. MITCHELL,
Defendant-Appellant,

ASSOCIATED PRESS; THE NEWS &
OBSERVER; THE CHARLOTTE
OBSERVER; THE BALTIMORE SUN

No. 98-4158

COMPANY; RICHMOND TIMES-
DISPATCH; THE MCGRAW-HILL
COMPANIES, INCORPORATED; THE
WASHINGTON POST; GANNETT
COMPANY, INCORPORATED; DOW JONES
AND COMPANY, INCORPORATED; NORTH
CAROLINA PRESS ASSOCIATION; THE
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
Amici Curiae.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CA-95-187-BR3-7)

Argued: October 27, 1998

Decided: July 6, 2000

Before WIDENER and LUTTIG, Circuit Judges, and
Catherine C. BLAKE, United States District Judge
for the District of Maryland,
sitting by designation.

_____

Reversed by published opinion. Judge Luttig announced the judgment
of the court and wrote an opinion for the court in Parts I, IIB, IIC, and

5

III, in which Judge Blake joined, and in Part III, in which Judge Widener joined in part. Judge Blake wrote an opinion concurring in part. Judge Widener wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Floyd Abrams, CAHILL, GORDON & REINDEL, New York, New York, for Appellants. Jonathan Drew Sasser, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellee Conoco; David William Long, POYNER & SPRUILL, L.L.P., Raleigh, North Carolina, for Appellee United States. **ON BRIEF:** Landis C. Best, CAHILL, GORDON & REINDEL, New York, New York; George Freeman, Assistant General Counsel, THE NEW YORK TIMES CO., New York, New York; Mark J. Prak, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Raleigh, North Carolina; Stephen T. Smith, MCMILLAN, SMITH & PLYLER, Raleigh, North Carolina, for Appellants. David E. Fox, Andrew B. Cohen, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina; George A. Phair, Senior Counsel, CONOCO, INC., Houston, Texas, for Appellee Conoco. Rodney A. Smolla, Marshall-Wythe School of Law, COLLEGE OF WILLIAM AND MARY, Williamsburg, Virginia, for Amici Curiae.

_____

**OPINION**

LUTTIG, Circuit Judge:

The United States District Court for the Eastern District of North Carolina held Kirsten B. Mitchell, a reporter for the Wilmington, North Carolina Morning Star newspaper, in criminal contempt under 18 U.S.C. § 402 and civil contempt under 18 U.S.C. § 401 for opening an envelope, in which was enclosed a confidential settlement agreement, and reading the agreement, which had been placed under seal by the district court. The district court held the Morning Star in civil contempt under 18 U.S.C. § 401 for reporting the previously confidential settlement amount and imposed upon the newspaper,

6

joint and severally with Mitchell, a fine of $600,000. Both Mitchell and the Morning Star appeal from the district court's contempt orders.

We conclude -- and conclude that it could not reasonably be found otherwise -- that the "decree" that Mitchell allegedly violated was not a bona fide decree of a court, and that even if it were, not only was the decree insufficiently specific to support a criminal contempt conviction, but Mitchell also did not act with the contumaciousness necessary to prove criminal contempt. We therefore reverse Mitchell's criminal conviction. We also reverse the district court's orders of civil contempt against both Mitchell and the Morning Star because the sealing order upon which these punishments were premised failed to comply with the requirements of our decision in In re Knight Publishing Company, 743 F.2d 231 (4th Cir. 1984).

I.

Plaintiff-appellee Conoco, Inc., and two of its subsidiaries (hereinafter "Conoco") were sued five years ago by 178 trailer park residents in Wilmington, North Carolina, for allegedly contaminating the residents' drinking-water supply. The liability phase of this lawsuit concluded with a jury verdict in the residents' favor that found Conoco liable for both compensatory and punitive damages. Before the jury concluded its deliberations on the amount of punitive damages to be awarded, however, Conoco and the residents reached a comprehensive and confidential settlement of the dispute in the amount of $36 million.

In order to preserve the confidentiality of the settlement terms, Conoco and the residents moved the district court for permission to file and maintain the settlement agreement and related documents under seal. Four days later, on September 22, 1997, without having provided public notice or an opportunity for interested parties to object, the district court granted the motion "for good cause shown" in a two-page order which was entered on the court's docket. J.A. 67-68; 46-47. The settlement documents were thereafter delivered to the district court in a closed white envelope, after which time the court opened the envelope, signed the settlement agreement to indicate its approval, and returned the agreement to the original envelope. The

7

envelope was then delivered to the clerk's office to be placed with the other documents related to the case. J.A. 77, 164.

Less than one month later, the Morning Star published a story disclosing the $36 million settlement amount agreed upon by Conoco and the plaintiff-residents and memorialized in the settlement agreement between the parties. The story reported that "[s]ources familiar with the settlement revealed its terms on condition of anonymity." J.A. 432. It further reported that "[a] document confirming the settlement amount was among public documents given to a Morning Star reporter [. . .] by a clerk at the federal courthouse in Raleigh." J.A. 432.[1] The reporter referenced in the story was defendant-appellant Kirsten B. Mitchell.

The day before the story ran in the Morning Star, Mitchell, who previously had had no involvement with the case between Conoco and the residents, J.A. 267, had been asked by her editor to go to the clerk's office and review any documents in the case between Conoco and the residents that had been filed "since the settlement." J.A. 533. Upon arriving at the clerk's office, Mitchell asked to see "[e]verything since the settlement" that was in the case file. J.A. 273. In response, Anne Caviness, the deputy clerk responsible for the case, brought to the clerk's office counter a "pile of documents," which included the white envelope containing the sealing order and the confidential settlement agreement at issue in this case.[2] Before handing the pile of documents to Mitchell across the counter, however, Caviness removed a large brown envelope from the pile, informing Mitch-

_____

[1] The story was written by reporter Cory Reiss, who, using ordinary reporting methods, learned of the settlement amount through two confidential sources. Reiss was subsequently held in civil contempt by the district court for refusing to divulge the identities of his sources. Reiss' appeal, Ashcraft v. Conoco, Inc., No. 98-2567, is today decided by separate opinion.

[2] At the contempt hearing, the clerk acknowledged that the confidential settlement agreement "should not have been included in the documents" provided to Mitchell. J.A. 172. The clerk explained that she "simply inadvertently forgot to remove that document from the stack" because, due to its white color, it had "blended in with all the other documents," unlike the brown envelope, which had "clearly stood out." J.A. 173.

8

ell: "You can't have this, this is a sealed document." J.A. 533. Mitchell responded "That's fine, I don't need to see that." J.A. 273. According to Caviness, Mitchell assented with "absolutely . . . no resistance. She was very cooperative." J.A. 182.

Mitchell then took the documents over to a bench in the clerk's office, and began skimming through them, chronologically "from the earliest to the most recent," according to her testimony. J.A. 274-75. When Mitchell came to the white envelope containing the settlement agreement, she saw the partial word and word "ENED OPENED," which appeared in red and white letters through a cellophane window on the back of the envelope. J.A. 283, 293. As described by the district court in its January 1998 order:

> The back of the envelope had a flap folded down from the top and a window centered in the flap with the following letters appearing in red and white: "ENED OPENED". Just adjacent to the flap appeared the following words in red: "Caution: The word `OPENED' appears in the window panel to indicate that the envelope has been opened."

J.A. 533. The envelope flap at this time was in the closed or down position and was "tacked down" or "sticky," J.A. 281,[3] but it is undisputed that the envelope had been opened "several times." J.A. 171 (Caviness testimony). Mitchell reached inside the envelope and removed a document that turned out to be the settlement agreement between Conoco and the plaintiff-residents. J.A. 292. The district court's two-page September 22, 1997, sealing order was attached to the front of the agreement. J.A. 532. The first page of this order included the case caption and the following heading in bold:

_____

[3] Although the district court described the envelope flap as "sealed," J.A. 533, it is undisputed that the original seal had been broken and that the partial word and word "ENED OPENED" appeared in the window panel.

ORDER GRANTING JOINT MOTION OF PLAINTIFFS AND
DEFENDANTS TO APPROVE
CONFIDENTIAL SETTLEMENT AGREEMENT,
TO DISMISS THIS ACTION AS SETTLED DISCONTINUED
AND ENDED,
AND TO PERMIT FILING AND MAINTENANCE OF
CONFIDENTIAL
SETTLEMENT DOCUMENTS UNDER SEAL

J.A. 67. The second page of the order stated that the settlement agreement and related documents were to "be filed and maintained confidentially under the seal of the Court." J.A. 68. Mitchell testified at the contempt hearing that she did not recall either seeing or reading the sealing order. J.A. 282, 292. In its January 1998 civil contempt order, the district court found by clear and convincing evidence, however, that Mitchell "saw the order sealing the terms of the Settlement Agreement." J.A. 534. After reading the settlement agreement and learning the $36 million figure paid to the plaintiffs by Conoco, Mitchell returned the document to the white envelope and, according to her testimony, "flipped [the envelope] over into [her] finished pile." J.A. 284. Mitchell testified, and the district court did not hold to the contrary, that she then noticed for the first time that on the front of the envelope was the following warning in boldface type:

CONFIDENTIAL SETTLEMENT AGREEMENT
FILED UNDER SEAL
TO BE OPENED ONLY BY THE COURT

J.A. 434. This warning had been affixed to the front of the envelope by a paralegal for Conoco's counsel; the specific language having been suggested by an employee of the clerk's office. J.A. 158, 226. The front of the envelope bore no indicia of a judicial order. At no time did Mitchell attempt to ascertain from the clerk's office whether the settlement agreement remained under seal. J.A. 534.

Mitchell spent a total of approximately 15-20 minutes looking through the documents before returning them to the clerk. Mitchell

10

then called her editor at the Morning Star and informed him of what she had learned. J.A. 289.**4**

The following day, October 15, the Morning Star ran its story, in which it disclosed the amount of the $36 million settlement. In the story, reference was made to a "document confirming the settlement amount." The referenced document was the confidential settlement agreement seen by Mitchell the previous day.

Following publication of this story, Conoco moved the district court for an order requiring Mitchell, Reiss, and the Morning Star to show cause why they should not be held in contempt of court for violating the district court's September 22, 1997, sealing order. J.A. 69. The United States Attorney for the Eastern District of North Carolina also moved the district court for a show cause order for criminal contempt. J.A. 79. The United States Attorney subsequently withdrew from the case because the Attorney General of the United States refused to authorize the prosecution. And the district court appointed a special counsel to prosecute the criminal contempt charges. J.A. 121-24.

The criminal and civil contempt motions were consolidated and heard together before the district court on December 17, 1997. At the conclusion of the hearing, the district court found Reiss and the Morning Star not guilty of criminal contempt. The district court, however, found Mitchell guilty of criminal contempt and later fined her $1,000. J.A. 393, 694. The district court took the civil contempt charges under advisement, and subsequently issued an order and opinion on January 21, 1998, holding both Mitchell and the Morning Star in civil contempt. See J.A. 528-549, 550-555. The court ordered Mitchell and the Morning Star, jointly and severally, to pay Conoco $500,000 in damages, plus costs and attorneys' fees, for a total fine of approximately $600,000. J.A. 549. Mitchell and the Morning Star appealed.

_____

**4** As a result of Reiss' investigation, the amount of the $36 million settlement was already known to Mitchell's editor at the Morning Star when he directed her to inspect the documents on file at the clerk's office. J.A. 290.

II.

In order to establish the offense of criminal contempt, the government must prove beyond a reasonable doubt that the defendant (1) violated "a decree" (2) that was "definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed," and (3) that, in doing so, the defendant acted "willfully, contumaciously, intentionally, [and] with a wrongful state of mind." United States v. McMahon, 104 F.3d 638, 642 (4th Cir. 1997) (quoting Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977)). We must in turn sustain a conviction for criminal contempt if "there is substantial evidence, taking the view most favorable to the government," to support the conviction. See United States v. Grubb, 11 F.3d 426, 433 (4th Cir. 1993) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).

A.

The threshold requirement of United States v. McMahon is that there in fact be a "decree" of the court. The initial question for us, therefore, is whether the order allegedly violated by Mitchell constituted a "decree" of the court at all. The special prosecutor argues to us on appeal that the decree violated by Mitchell was the district court's two-page order of September 22, 1997, in which the court granted the parties' joint motion to approve the confidential settlement agreement, to dismiss the action, and to permit filing and maintenance of the settlement agreement under seal. Thus, he argues (in response to Mitchell's suggestion that the exact decree violated was a "moving target," see Br. for Appellant at 24) that "[t]he `decree' violated by Mitchell was not a `moving target'-- it was the Order sealing the Confidential Settlement Agreement," Br. of United States at 14 (emphasis added), which the special prosecutor confirms one page earlier in his brief that he understands to be the district court's two-page sealing order that had been "clipped on top of the Confidential Settlement Agreement." Id. at 13. The special prosecutor even represents that he "plainly stated as much in his final argument to the district court," citing to his remarks that appear on pages 368 and 369 of the joint appendix. Id. at 14-15 (citing J.A. 368-369); compare id. at 5 (citing different passage from colloquy with district court relating to the government's argument as to Reiss, see note 6 infra, for same

12

proposition that government argued to court that the sealing order was the decree violated). And he contends that "[t]he district court . . . never held that the admonition on the printed envelope was, by itself, the court order that was the subject of the contempt." Id. at 15 n.7; compare id. at 5 ("[T]he district court made clear that the judicial order which was violated and which constituted the basis of the contempt proceeding was the Order, which sealed the Confidential Settlement Agreement." (citations omitted)); see also Br. of Conoco at 19 ("The district court never held that the admonition on the printed envelope was, by itself, a court order which Appellants were required to obey.").

It is beyond question, however, not only that special prosecutor did not argue before the district court that the decree violated was the two-page sealing order, but also that the district court did not rest its criminal contempt finding upon a violation of the two-page sealing order.

The special prosecutor did not argue to the district court that the decree violated was the two-page sealing order clipped to the settlement agreement. Rather, on the very pages from the joint appendix to which he now cites the court, although he commented at length that the two-page order was in the white envelope and that it was clipped to the settlement agreement -- intentionally implying, but never actually stating that Mitchell had seen the two-page order -- the special prosecutor quite plainly argued that the "decree" violated was that that appeared on the front of the white envelope, which reads "CONFIDENTIAL SETTLEMENT AGREEMENT. FILED UNDER SEAL. TO BE OPENED ONLY BY THE COURT.", not the two-page sealing order attached to the settlement agreement:

> After looking through the settlement agreement and, by her language, confirming the amount of the settlement agreement, she then turned the envelope over and, if it wasn't clear to her before that that document was under seal, it should have been clear afterwards because the document in no uncertain terms, and this is the definite, clear, specific, and left no doubt or uncertainty in the minds to those whom it was addressed. It said, "CONFIDENTIAL SETTLEMENT

13

J.A. 369 (statements of Special Prosecutor Long); compare Br. of United States at 16 ("The Order was definite and clear. In its caption, the Order states "ORDER GRANTING MOTION . . . TO PERMIT FILING AND MAINTENANCE OF CONFIDENTIAL SETTLE-MENT DOCUMENTS UNDER SEAL."). Thus, at the precise moment when the special prosecutor apprised the court of the order that he contended satisfied the McMahon requirement that the decree be "definite, clear, specific, and le[ave] no doubt or uncertainty in the minds of those to whom it was addressed," the special prosecutor identified not the two-page order, or even any language from that order, but, rather, the directive that appears on the face of the white envelope, which reads "CONFIDENTIAL SETTLEMENT AGREE-MENT. FILED UNDER SEAL. TO BE OPENED ONLY BY THE COURT."**5**

_____

**5** In every other instance, as well, in which the special prosecutor spe-cifically identified the decree that he contended was violated, with the possible exception of one, he likewise identified the decree as that appearing on the face of the white envelope. Thus, for example, when the court asked whether the order violated by the New York Times was "the order on the document saying, "TO BE OPENED ONLY BY THE COURT," the special prosecutor responded, "Yes, sir, absolutely; that is our position." J.A. 371. And, as if to confirm that he was referring to the language that had just been quoted by the court, Long added, "And our position is that that could not be any more clear than it is." Id. Of course, the two-page sealing order does not include any language to the effect that it or anything it references is "TO BE OPENED ONLY BY THE COURT." J.A. 67-68.

In the single instance in which the special prosecutor did arguably con-tend that the decree violated was the two-page order, he stated that "the only issue is whether he [Reiss] violated docket number 196," which was the two-page order. J.A. 373. This statement, however, was made in ref-erence to Reiss, not in reference to Mitchell or to the New York Times. Moreover, however clear this statement may appear to be when quoted in isolation, it was anything but clear in the context of the colloquy between the special prosecutor and the court. Almost immediately prior to the special prosecutor's statement, the district court asked whether, for

14

More importantly, just as plainly as the special prosecutor argued that the decree violated was the directive on the front of the white envelope, the district court plainly rested its criminal contempt finding exclusively upon violation of that directive, and not upon a violation of the two-page order. Thus, it is not so much, as the special prosecutor and Conoco argue, that the district court "never held that the admonition on the printed envelope was, <u>by itself</u>, the court order that was the subject of the contempt"; it is that the district court never held that anything other than the printed admonition was the subject of the criminal contempt. As the district court explained:

> [T]he <u>only</u> order of this court to which this [charge of criminal contempt] can be taken to apply [. . .] is the order with regard to the sealing of the document which said "<u>To be opened only by the court.</u> Placed under seal."

> The confidentiality of the settlement agreement, as such, is not an order of the court. What's the order of the court is

_____

purposes of proving that a decree had been violated,"the decree of the court . . . that I signed, that that document was not to be opened or `to be opened only by the court'" was "the only order you [special prosecutor Long] have to -- you've got to hang your hat on." J.A. 372. Long responded with unmistakable clarity that, "That's the only order we've got to hang our hat on." J.A. 373. Despite this obvious assent to the district court's statement that the language violated was that that appeared in the directive on the envelope, rather than that in the two-page order inside the envelope, it was only three sentences later that the special prosecutor stated that "the only issue is whether he [Reiss] violated docket number 196."

Whether the special prosecutor was himself confused as to whether the two-page sealing order included the language "TO BE OPENED ONLY BY THE COURT"; whether he simply regarded the directive on the face of the envelope and the two-page sealing order as one and the same; or whether, as a strategic matter, he wished not to focus the court on the difference between the two in the event the court was unaware of the difference, we are not in a position to know. But it is clear beyond any question that, at the pages to which he references the court, and generally throughout his colloquy with the court, the special prosecutor argued that the decree violated by Mitchell was the directive that appears on the face of the white envelope.

15

> [that] this document in this envelope may not be opened
> except by the court.

J.A. 392-93 (emphases added).**6** Indeed, in a statement that, frankly, gives us pause over the special prosecutor's representations as to his own argument below and the basis for the district court's finding, the district court specifically stated that it was "through candid admission

_____

**6** Elsewhere in its colloquy with the special prosecutor, the district court similarly references as the decree that was violated the language that appears on the outside of the white envelope. For example, in an apparent effort to force the special prosecutor to articulate precisely what order was violated, the court asked: "Is it your position that the New York Times violated that order; that is, the order on the document saying "TO BE OPENED ONLY BY THE COURT[?]" J.A. 371. The special prosecutor responded that that was "absolutely" his position. See id.

The court never evinces during the hearing a clear understanding as to whether the decretal language appears on the outside of the white envelope or within the text of the two-page sealing order. It actually appears, however, that the court may have believed that the decretal language "TO BE OPENED ONLY BY THE COURT" appeared within the two-page order. For example, the court stated at one critical point in the hearing that the special prosecutor was relying on "the decree of the court . . . that I [the court] signed, that that document was not to be opened or "TO BE OPENED ONLY BY THE COURT." J.A. 372. If the special prosecutor understood that the directive on the face of the envelope and the two-page sealing order were not one and the same, he certainly did nothing to disabuse the district court of any misunderstanding under which it was laboring. See supra note 6. Of course, to the extent, if any, that the district court could be understood to have based Mitchell's criminal contempt conviction on such an order, then Mitchell certainly did not violate any "decree" of the court because there was no decree that both bore the court's signature and included the language, "TO BE OPENED ONLY BY THE COURT."

As with the special prosecutor, we are not in a position to know why the district court at times seems to have conflated the directive that appeared on the envelope and the two-page sealing order. Regardless of the reason, however, it is clear, as we explain in text, that, throughout the hearing, the district court always believed that it was the directive's language "TO BE OPENED ONLY BY THE COURT" that constituted the violated decree of the court.

16

from Mr. Long [the special prosecutor]" that it had concluded that the only decree to which the criminal contempt charge could relate was the directive on the face of the white envelope. J.A. 392.**7**

_____

**7** Even were we to conclude that the two-page sealing order was the decree violated, we would yet reverse Mitchell's criminal contempt conviction as unsustainable under <u>McMahon</u>, because of the ambiguity of that order generally, and the ambiguity of its reach to Mitchell in particular, as a non-party to the underlying litigation. The portion of this order that the special prosecutor argues constitutes a sufficiently clear decree is the order's caption, which reads in full as follows:

ORDER GRANTING JOINT MOTION OF PLAINTIFFS AND DEFENDANTS TO APPROVE CONFIDENTIAL SETTLEMENT AGREEMENT, TO
DISMISS THIS ACTION AS SETTLED DISCONTINUED AND ENDED, AND TO
PERMIT FILING AND MAINTENANCE OF CONFIDENTIAL SETTLEMENT AGREEMENT UNDER SEAL.

J.A. 67. That the court had merely granted a motion to "approve" a confidential settlement agreement would not apprise even a party, much less a third person, that he was bound not to disclose the contents of that agreement; such an order merely evidences that the court had approved the fact and terms of the parties' settlement agreement. That the court had granted a motion to "permit filing" of the agreement under seal similarly would not necessarily apprise a party or a third person that he was bound to nondisclosure; such simply evidences that the court had authorized the parties to file the agreement under seal with the court, not even that the agreement actually had been filed under seal. That the court had granted a motion to "permit maintenance" of the agreement under seal would, at most, only apprise a reader that the court had granted the parties permission to maintain the agreement under seal; it would not necessarily apprise either that the court itself had ordered the agreement maintained under seal or that the agreement was currently being maintained under seal. Even if the granted motion as to maintenance could be understood as an order of the court to maintain the agreement sealed, it would certainly not necessarily apprise a third person that he was not free to disclose the contents of the agreement, as such an order would most reasonably be understood as an order directed solely to the personnel of the court, and, at most, to the court's personnel and the parties to the litigation. Indeed, the second page of the district court's two-page sealing order all but confirms as much:

> IT IS FURTHER ORDERED that the Confidential Settlement Agreement, the exhibits thereto, and any documents of the Clerk

17

Accordingly, it is apparent that Mitchell's criminal contempt conviction rested upon a finding by the district court that Mitchell violated the "decree" that appeared on the face of the white envelope, which reads "TO BE OPENED ONLY BY THE COURT."

It is evident from the record, however, that this "decree" was not a decree or an order of the court at all. Rather, as noted previously, this language was affixed to the white envelope by one of Conoco's paralegals, with the knowledge and advice of a clerk's office staff member, but, insofar as the record reveals, not upon her instruction or the derivative instruction of the court. The district court played no role whatever in drafting the directive or in affixing the directive to the front of the envelope. Nor did the district court sign the warning or direct that it be placed on the front of the envelope. The warning bore neither a name nor a signature of any other judicial officer, or any date of any judicial action. And the warning was never entered on the court's docket. Given that Conoco's paralegal was not vested with any authority over court personnel, the warning cannot even be characterized as "a directive to court personnel and clerk's office employees," Appellants' Br. at 24.**8**

B.

Even were the warning "TO BE OPENED ONLY BY THE COURT" a "decree" or court order, we would still conclude that there

_____

of Court and the Parties filed in the future and relating to the management and evaluation of the settlement, including the custody and distribution of settlement funds, be filed and maintained confidentially under the seal of the Court.

J.A. 532.

**8** In concluding as we do that Mitchell's criminal conviction must be reversed since the "decree" or order on which it was based was not even a court order or "decree" at all, we emphasize that we would not reach the same conclusion (at least for this particular reason) were the "decree" or order shown to be simply invalid or unconstitutional. The mere invalidity or unconstitutionality of the underlying court order is insufficient to warrant overturning a criminal contempt conviction. See Maness v. Meyers, 419 U.S. 449, 458-59 (1975); Walker v. City of Birmingham, 388 U.S. 307, 315, 320-21 (1967).

18

is insufficient evidence to sustain Mitchell's conviction, because the other two elements required to prove criminal contempt -- that the order be "definite, clear, specific" and that the defendant have "willfully, contumaciously, [and] intentionally" violated the order -- have likewise not been proven beyond a reasonable doubt.

With respect to the second element, we conclude that there is not substantial evidence to support a conclusion that the warning "TO BE OPENED ONLY BY THE COURT" is "definite, clear,[and] specific," much less that it so clear as to "le[ave] no doubt or uncertainty in the minds of those to whom it was addressed," within the meaning of McMahon. Most significantly insofar as this case is concerned, even assuming that this warning could be understood to clearly and definitely extend to persons other than court personnel (which is questionable), this warning could reasonably be understood as informing a reader either that the envelope may only be first opened by the court or that the envelope may never be opened by anyone other than the court. That is, one could quite reasonably read "TO BE OPENED ONLY BY THE COURT" as referring only to the initial opening of the envelope or as referring to any opening of the envelope itself, whether the initial or a successive opening. That the former understanding of the warning is plausible is critical in this case, given that when Mitchell first picked up the white envelope from the pile of documents provided her by Caviness, it is undisputed that the partial word and word "ENED OPENED" appeared prominently in red and white letters through a cellophane window on the envelope's flap. Thus, even assuming that Mitchell saw the warning before taking the contents from the envelope and that the warning was a bona fide decree, she could reasonably have believed that she was not in violation of that decree since the envelope had already been "OPENED." Indeed, Caviness testified that the envelope had been "entered several times." J.A. 171.

C.

With respect to the third element, we also conclude that there was insufficient evidence to support the conclusion that Mitchell acted "willfully, contumaciously, intentionally, [and] with a wrongful state of mind," as required under McMahon. The events from which one could infer contumaciousness are as follows.

19

Upon arriving at the clerk's office on the morning of October 14, 1997, Mitchell asked to see "everything" filed in the dispute between Conoco and the plaintiff-residents "since the settlement." J.A. 273. The deputy clerk, Anne Caviness, returned from behind the counter with a "pile of documents." J.A. 273. In Mitchell's presence, before handing the pile to Mitchell, Caviness removed a brown envelope from the stack and said to Mitchell, "You can't have this, this is a sealed document," J.A. 178, 533, to which Mitchell replied, "That's fine, I don't need to see that." J.A. 273. Caviness testified that Mitchell assented to her instructions with "[a]bsolutely [. . .] no resistance. She was very cooperative." J.A. 182.

Mitchell thereafter took the pile of documents to a bench in the clerk's office and turned through them, eventually coming to the white envelope at issue, which Caviness acknowledges was "inadvertently" included in the stack of documents due to its white color. J.A. 172-173. Whether or not she saw first the front of the envelope bearing the directive "TO BE OPENED ONLY BY THE COURT," see note 9 infra, Mitchell saw on the back of the envelope a cellophane window in which appeared the partial word and word"ENED OPENED" and the warning "Caution: The word`opened' appears in the window panel to indicate that the envelope has been opened." As the district court described:

> The back of the envelope had a flap folded down from the top and a window centered in the flap with the following letters appearing in red and white: "ENED OPENED". Just adjacent to the flap appeared the following words in red: "Caution: The word `OPENED' appears in the window panel to indicate that the envelope has been opened."

J.A. 533. The envelope flap was "tacked down" or "sticky," J.A. 281, but the seal had been broken and the envelope opened several times. J.A. 171. Mitchell lifted the flap and removed from the envelope the settlement agreement. Attached to the settlement agreement was the district court's two-page sealing order, which the district court found that Mitchell saw. J.A. 532-534. After reading the settlement agreement and learning of the $36 million settlement amount, Mitchell reinserted the document to the white envelope, returned the docu-

20

ments to the deputy clerk, and left the clerk's office, whereupon she telephoned her editor with the information she had learned.

Based upon this sequence of events, we are convinced that no reasonable trier of fact could conclude that Mitchell acted with the contumaciousness necessary to support a conviction for criminal contempt. There is simply no evidence whatsoever in this sequence of events from which one could even infer an intent to violate a court order of confidentiality, at least absent a finding that Mitchell actually saw the directive on the face of the white envelope prior to opening the envelope and reviewing the contents, which the district court did not find.**9** Therefore, we conclude that no rational trier of fact could

_____

**9** Although for purposes of the civil contempt citations against Mitchell and the Morning Star, the district court found that "Mitchell was aware that the envelope warned that it was TO BE OPENED ONLY BY THE COURT before she reported its contents to her superiors at the Morning Star." J.A. 534 (emphasis added), for purposes of Mitchell's criminal contempt conviction, the district court made no specific finding on whether Mitchell saw the directive before or after she reviewed the envelope's contents, and no specific finding was required pursuant to Fed. R. Crim. P. 23(c).

Ordinarily, we would ascribe to the district court a finding that it necessarily must have made -- here, for example, a finding that Mitchell saw the directive on the face of the white envelope before she opened the envelope and reviewed its contents. In this case, however, because the district court may well have believed (albeit in error) that the directive reading "TO BE OPENED ONLY BY THE COURT" appeared on the two-page sealing order, rather than on the envelope, see note 6 supra, it is not necessarily the case that the district court found that Mitchell saw the directive before reviewing the envelope's contents. That is, even though the district court clearly concluded that it was the directive on the face of the envelope that Mitchell violated, the fact that the court may have believed that that directive appeared on a document inside the envelope makes it impossible for us to conclude that the district court necessarily found what otherwise it would necessarily have had to find.

And indeed, we believe it likely that the district actually believed that Mitchell did not see the directive before opening the envelope, based upon the district court's finding, for purposes of Mitchell's civil contempt, only that she was aware of the directive "before she reported its

21

find beyond a reasonable doubt that Mitchell willfully and contumaciously, and with intent, violated a judicial order.

If anything, in our view, the above sequence of events all but confirms that Mitchell acted wholly innocently, and certainly innocently insofar as the law is concerned.

First, Mitchell had had no prior involvement with the case between Conoco and the plaintiff-residents before she was asked simply to go to the clerk's office to check for recent filings. Second, upon arriving at the clerk's office, Mitchell only requested from Deputy Clerk Caviness documents filed "since the settlement," a request which, on its face (at least arguably) elicited only documents filed after the settlement agreement was approved. Third, Mitchell reasonably would have assumed from the outset that the documents the deputy clerk brought to the counter were documents to which she was entitled to have access. Fourth, certainly after the deputy clerk, in Mitchell's presence, physically removed one envelope from the document stack specifically on the ground that the document was sealed, Mitchell would have had every reason to believe that the remaining documents were publicly available, the clerk's diligence having been proven. Fifth, at least initially, Mitchell could have reasonably believed, from the fact that the envelope in which the settlement agreement was enclosed was white and that the sealed document removed from the stack by the deputy clerk was enclosed in a brown envelope, that the contents of the white envelope were not sealed. Sixth, Mitchell not only could have reasonably believed, but would have most reasonably believed, from the fact that the white envelope had been opened and indicated that it had been opened, that the enclosed documents were publicly available. Indeed, we are of the view that, from the combination of these facts -- and in particular the facts that Mitchell was pro-

_____

contents to her superiors at the Morning Star." J.A. 534. We think it highly unlikely that the district court was willing to find by a preponderance of the evidence for purposes of the civil contempt citation only that Mitchell saw the directive on the face of the white envelope sometime before telephoning her editor but, for purposes of the criminal contempt conviction, found beyond a reasonable doubt that Mitchell in fact saw the directive before she opened the envelope and reviewed its contents.

22

vided the documents by an official of the court in response to a request for publicly available documents, that the deputy clerk had removed a sealed document from the pile in Mitchell's presence, and that the white envelope had been opened (as reflected by the cellophane window legend) -- it would occur to few, if any, in Mitchell's position that the settlement agreement was anything but a publicly available document.

Accordingly, because we conclude that the district court's findings as to none of the three elements of the criminal offense of contempt are supported by the requisite substantial evidence, Mitchell's criminal contempt conviction is reversed.

III.

The district court, by separate order of January 21, 1998, also held Mitchell and the Morning Star in civil contempt for violating, not the directive that appears on the white envelope, but the court's September 22, 1997 sealing order itself. To establish civil contempt, each of the following elements must be shown by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . .. that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-6 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994). We review the district court's civil contempt order for abuse of discretion. Colonial Williamsburg Found., 38 F.3d at 137.

In their consolidated appeals, Mitchell and the Morning Star contend that the evidence before the district court was insufficient to hold them in civil contempt. First, they argue that the district court's September 1997 sealing order was not a "valid decree." Second, they

23

argue that neither Mitchell nor the Morning Star had actual or constructive knowledge of the court's sealing order. Third, they argue that neither contemnor knowingly violated the sealing order. And fourth, they argue that Conoco suffered no legally cognizable harm as a result of their conduct. See Appellants' Br. at 26-32. Because we agree that the district court's September 1997 sealing order does not constitute a "valid decree" for purposes of the court's civil contempt orders, we also reverse these contempt findings as to both appellants.

Although the district court based its criminal contempt finding on a violation of the warning on the front of the white envelope, as we explain supra, in its January 1998 order holding Mitchell and the Morning Star in civil contempt, the district court clearly based its civil contempt findings on a violation of the two-page order that was attached to the settlement agreement and placed inside the white envelope. See J.A. 536 ("[C]ivil contempt can only arise in this case from conduct contravening the court's written order sealing the Settlement Agreement."); see also J.A. 554 (stating in civil judgment that "Kirsten B. Mitchell and the Morning Star did act in contempt of this court in violating the order of this court dated 22 September 1997 sealing the terms of the confidential settlement agreement").**10** Although there is no doubt that the court's sealing order itself constitutes a judicial order, appellants challenge the validity of the order based on the district court's failure to abide by the procedures for sealing court documents established by this court in In re Knight Publishing Company, 743 F.2d 231 (4th Cir. 1984), and reiterated in Stone v. University of Maryland Medical Systems Corporation, 855 F.2d 178 (4th Cir. 1988).

In Knight, we explained that, while a district court "has supervisory

_____

**10** Thus, although the district court's memorandum opinion with respect to the civil contempt proceeding does make reference to the language that appeared on the front of the white envelope, see, e.g., J.A. 534 (stating in "Findings of Fact" that "Mitchell was aware that the envelope warned that it was TO BE OPENED ONLY BY THE COURT before she reported its contents to her supervisors at the Morning Star), it is clear that the decree that the district court concluded was violated for purposes of the civil contempt finding was the two-page order that appeared inside the envelope.

24

power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests," the "presumption" in such cases favors public access. Knight, 743 F.2d at 235; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Accordingly, before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. See Knight, 743 F.2d at 235-36; see also Stone, 855 F.2d at 181. These procedures "must be followed when a district court seals judicial records or documents." Stone, 855 F.2d at 179-80, 182.

The district court in this case did not comply with the requirements set forth in Knight and Stone for sealing court documents. Despite the Morning Star's demonstrated interest in the case, no public notice of the parties' joint motion to seal the settlement agreement was given; no opportunity for interested parties to object was provided; there is no indication that the district court considered less drastic alternatives to sealing the agreement; and the court's sealing order did not identify any specific reasons or recite any factual findings justifying the court's decision to override the public's right of access to the settlement documents. Since the mandatory procedures established by this court in Knight for sealing court documents were not followed by the district court before it issued its September 1997 sealing order, that order does not constitute a "valid decree," and therefore it cannot serve as a basis to sustain the court's civil contempt rulings. See McLean v. Central States Pension Fund, 762 F.2d 1204, 1210 (4th Cir. 1985) ("reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon") (citing ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1356 (5th Cir. 1978) (citing cases)). Accordingly, the district court's findings of civil contempt as to both Mitchell and the Morning Star, together with the sanction imposed therefore are reversed.[11]

_____

[11] Since we reverse the district court's criminal and civil contempt orders for insufficiency of the evidence, we decline to address the appel-

25

IV.

It is to be expected in a highly charged case such as this, that on occasion the parties will ascribe to each other positions that they do not espouse or espouse passionately in the heat of battle but only half-heartedly outside the fray. Appellees accuse the appellants in this case of "waging a First Amendment battle" for a special privilege in the press to access confidential information in the hands of government, a view seemingly shared by the district court. For their part, the press defendants accuse the special prosecutor and Conoco of conspiring to subvert the important values of the First Amendment, at times unmistakably lacing their arguments with overtones of special privilege. Ultimately, however, even they disavow that they claim any "special right of access" to sealed material that is unavailable to the public generally, and it is on the neutral ground represented by this disavowal that we resolve the current dispute. For all of the parties agree that the press, whether or not it enjoys special privileges, enjoys no <u>fewer</u> privileges than other citizens interested in, and entitled to information about, their government. And we hold today only that no citizen in this country, media or otherwise, may be criminally (and civilly) punished for the conduct that occurred here.

A citizen who requests public documents from an officer of the court, who herself evidences diligence in safeguarding the confidences of the court, and is given an envelope that once was sealed but has been previously opened and is at the time open and denominated as such, is entitled to presume that that envelope and its contents are publicly available material, at least absent proof of knowledge otherwise. No citizen is responsible, upon pain of criminal and civil sanction, for ensuring that the internal procedures designed to protect the legitimate confidences of government are respected.

_____

lants' additional arguments that the district court lacked jurisdiction to hold them in contempt, that the district court violated fundamental principles of separation of powers in appointing a special prosecutor to prosecute the criminal contempt charges, and that the district court's contempt orders violated the appellants' rights under the First Amendment.

For the reasons stated herein, the judgment of the district court is hereby reversed.

REVERSED

BLAKE, District Judge, concurring in part:

I concur in the reversal of Mitchell's criminal contempt conviction. Specifically, I concur in Part II(C) of Judge Luttig's opinion finding insufficient evidence to support the conclusion that Mitchell acted "willfully, contumaciously, intentionally [and] with a wrongful state of mind" as required under United States v. McMahon, 104 F.3d 638, 642 (4th Cir. 1997) (quoting Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977)). As to Part II(B), while the language "TO BE OPENED ONLY BY THE COURT" is "clear" in a literal sense, McMahon teaches that we must consider the entire factual background and the defendant's own circumstances rather than "some hypothetical situation." Id. at 643. On the facts of this case, including the court clerk's handing to Mitchell a pile of documents after removing one with the statement "You can't have this, this is a sealed document," and the appearance of the word "OPENED" in the cellophane window indicating that the envelope Mitchell was handed had already been opened, I agree there is not sufficient evidence to support a conclusion that the order was "definite, clear, [and] specific, [leaving] no doubt or uncertainty in the minds of those to whom it was addressed." Id. at 642. For these reasons I concur in Part II(B). I would not reach the first element of the offense and therefore do not join in Part II(A).

I concur in Part III of Judge Luttig's opinion, finding the September 1997 sealing order invalid, and therefore agree that the civil contempt findings and sanctions as to both Mitchell and the Morning Star must be set aside.

WIDENER, Circuit Judge, concurring and dissenting:

I.

I concur in such parts of Part III of the majority opinion, as hold the September 1997 sealing order to be invalid. For that reason alone

27

I concur in the vacation of the civil contempt convictions of Miss Mitchell and the Morning Star.

II.

With respect to the balance of the decision, however, and especially Part II, I respectfully dissent. I would affirm the conviction of Miss Mitchell for criminal contempt.

The majority initially engages in an eight-page discussion (including more than three pages of single-spaced footnotes) of whether Miss Mitchell was found guilty of criminal contempt for violating the two-page order of September 22, 1997 or what the majority calls the "directive that appears on the face of the white envelope." Ultimately, the majority correctly concludes that the district court decided that Miss Mitchell violated the instructions on the outside of the envelope containing the settlement agreement, which envelope she had to open to see the settlement agreement. Those instructions were:

CONFIDENTIAL SETTLEMENT AGREEMENT
FILED UNDER SEAL
TO BE OPENED ONLY BY THE COURT

The lengthy justification for finding the order Miss Mitchell was charged with violating to be that which was written on the face of the envelope containing the settlement agreement and the order approving the settlement agreement, is quite beside the point, I suggest, for the district court, referring to the order involved, stated, in English as plain as the order itself,

> the order of this court is [that] this document in this envelope may not be opened except by the court. (Italics added.)

The majority then finds that the order was not a court order for the purposes of a finding of contempt because the wording of the warning on the envelope had been placed there by a paralegal at the direction of the case manager, a deputy clerk of the court; the judge played no role in drafting the language on the front of the envelope and did not sign the front of the envelope, which did not bear his name on the face thereof; and the warning was never entered on the court's docket.

28

Some of those reasons are without factual support, and the others are matters of indifference. The paralegal who made the entry on the back of the envelope did so at the direction of Anne Caviness, a deputy clerk of many years, the case manager of this case, whose duty it was to see that the envelope was marked and sealed. "Well, it's a sealed document so I was responsible that it be marked and sealed." (J.A. 169) If this deputy clerk and case manager was not acting for the district judge, federal judges may as well cease to function, for no judge can attend to the thousands of details of his office without clerical assistance, be it a secretary or deputy clerk. It is a matter of common knowledge that district judges do not personally draft many or even most of their orders. The order which was signed by the district judge, and which was enclosed in the envelope, states unequivocally, in capitals at the outset, that it permits the "FILING AND MAINTENANCE OF CONFIDENTIAL SETTLEMENT DOCUMENTS UNDER SEAL" and further, in the text of the order, that the "Confidential Settlement Agreement, the exhibits thereto, and any documents of the Clerk of Court and the parties filed in the future . . . relating to . . . the settlement . . . be filed and maintained confidentially under the seal of the court." The white envelope in question here contains on the face thereof the clerk's notation of docket no. 196. No. 196 is the docket number of the order granting the joint motion to approve the settlement agreement. To separate the warning on the face of the envelope from the contents thereof, I suggest, is straining too far to justify an acquittal.

The majority next finds that the warning on the envelope:

CONFIDENTIAL SETTLEMENT AGREEMENT
FILED UNDER SEAL
TO BE OPENED ONLY BY THE COURT

is not "definite, clear, specific." In my opinion, the warning could hardly have been more definite, or clear or specific, and construing that such a warning is equivocal is simply more straining to justify a reversal as is its statement that Miss Mitchell might have thought the opening referred to was an initial rather than a subsequent opening. Even Miss Mitchell did not make this claim in her testimony. She claimed that she had not seen the warning on the front, so she could

29

not have related the word "opened" on the back to the front, which she had not seen.

The majority applies much the same reasoning to the fact that even if the order was valid and the direction was clear, Miss Mitchell did not act with "a contumaciousness necessary to support a conviction for criminal conduct." It arrives at this conclusion because the district court did not make a specific fact-finding that "Mitchell actually saw the directive on the face of the white envelope prior to opening the enclosure and reviewing its contents." Such a requirement of the majority, that a district court in a criminal case make specific fact-findings absent request, is simply in violation of Fed. R. Crim. P. 23(c) and case authority. United States v. Bolles, 528 F.2d 1190, 1191 (4th Cir. 1975).

The majority's conclusion that the evidence does not support the conviction is phrased as follows: " . . . we are convinced that no reasonable trier of fact could conclude that Mitchell acted with contumaciousness necessary to support a conviction . . . ." To arrive at that conclusion, the majority relied to a considerable extent on the testimony of Miss Mitchell, an example of which follows: "Mitchell testified, and the district court did not hold to the contrary, that she then noticed for the first time that on the front of the envelope was the following warning in bold face type . . . ." Of course, the district judge who saw Miss Mitchell and heard her testify necessarily did not believe her. The required supposition of the majority is that it believes the district judge did not act as a reasonable trier of fact, as it states in its opinion. The fact that a district court does not hold to the contrary of the statement of a defendant denying guilt in a criminal case should be of no moment, much less very nearly controlling, as here.

The reliance of the majority on the testimony of Miss Mitchell is also demonstrated by the physical attributes of the papers involved and, as well, by its construction of the testimony of Anne Caviness, who, as noted, was the case manager and deputy clerk of the district court.

On page 9 of the slip opinion, the majority states that "it is undisputed that the envelope had been opened `several times'," for which it relies on the testimony of Anne Caviness. That testimony of Anne

30

Caviness, however, was taken at the show-cause hearing on account of the contempt citation, which hearing was held December 17, 1997. Her testimony was "I know this document, this envelope [the paper involved] has been entered several times." So Anne Caviness did not testify that the document <u>had</u> been entered several times before October 14, 1997, when Miss Mitchell opened it, but several times before December 17, 1997, the date of the hearing.

A description of the white envelope involved and the contents of the envelope is helpful. The envelope is of sturdy white paper, 8-3/4" in width and 11-3/4" in length, with the flap for opening on the 8-3/4" side. The seal is a red pressure-sensitive seal attached to the flap, with the word "opened" inked in pressure-sensitive material on the red seal and on a window in the flap made of clear plastic, so that when the envelope is opened, the ink remains on the envelope and when re-sealed, the word "opened" appears in white in the window. In the envelope was the order of two pages approving the confidential settle-ment, which was signed by Judge Britt on September 18, 1997. A fil-ing stamp on that order, as well as the envelope, shows that it was filed in the clerk's office on September 22, 1997, the date of the docket entry, and the envelope was stamped received in the clerk's office on September 18, 1997, the same day that Judge Britt signed the order. Clipped to the two-page order is the confidential settlement agreement of nine pages, accompanied by Exhibits A through H, of 28 pages. Thus, the envelope which Miss Mitchell opened was not merely an innocuous, ordinary envelope, as might be supposed, rather a somewhat bulky envelope containing the two-page order of the dis-trict court, accompanied by 37 pages of other material. Whether or not the envelope had been opened by anyone else prior to the time Miss Mitchell opened it does not appear in the record with any consis-tency, but should not be determinative of this case. An examination of the envelope and its contents makes her testimony, that she exam-ined the back of the envelope but not the face of it, very nearly inher-ently incredible, and, in all events, corroborates the necessary finding of the district court that she opened the envelope in violation of the express direction on its face.

In sum, it is my opinion that the majority simply believed the testi-mony of Miss Mitchell and did not give sufficient weight to the fact that the district judge who tried the case, saw the defendant-witness,

31

and heard her testimony. In addition, the district court was construing its own order. That is admitted. In such a case, we must defer to the district court in the construction of its own order, which was not done by the majority. Anderson v. Stevens, 875 F.2d 76, 80 n.8 (4th Cir. 1989); Simmons v. South Carolina Ports Authority, 694 F.2d 63, 66 (4th Cir. 1982).

I would find that the district court permissibly construed its own order and that the evidence was sufficient to support the conviction. It is idle to suggest that a jury's verdict on the same facts would be overturned for lack of evidence and the defendant should fare no better in this case.

I would affirm.*

_____

* I also note that in footnote 11 of the majority opinion it declines to address the additional argument or arguments that the district court lacked jurisdiction. It did this because it reversed for insufficiency of the evidence. If the district court did not have jurisdiction, it would have been unable to make any finding on the sufficiency of the evidence, and the proper result would have been to require the district court to dismiss the case for want of jurisdiction. See Fed. R. App. P. 12(h)(3). It is true that the procedure adopted by the majority is in accord with our previous practice, as illustrated in Richardson v. McFadden, 563 F.2d 1130 (4th Cir. 1977) (en banc), but that practice has not survived Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379 (1981), which is consistent with the concurring opinions in Richardson and requires a finding as to jurisdiction prior to a consideration of other error.